HANNAH FITCHIE, BARRY FITCHIE, HANNAH
  FITCHIE AND BARRY FITCHIE,. EXECUTORS
  UNDER THE WILL OF ELIZA FITCHIE, DE-
  CEASED, ELIZA FRENCH, JOHN GALBRAITH,
  WILLIAM GALBRAITH, SAMUEL GALBRAITH,.
  MARTHA CULLY AND MARGARET JANE ROME,
  v. CECIL BROWN AND W. O. SMITH, EXECUTORS.
  UNDER THE WILL OF GEORGE GALBRAITH,
  DECEASED, AND HAWAIIAN TRUST COMPANY,.
  LIMITED.

SUBMISSION ON AGREED STATEMENT OF FACTS.

ARGUED OCT. 8, 9, 10, 1906.          DECIDED NOV. 1, 1906.

FREAR, C.J., HARTWELL AND WILDER, JJ.

WILL—*construction—rule against perpetuities—trust for accumulation.*
    The will, after providing for legacies, contained the following
    provision: "The balance, residue or remainder of my estate is to
    be placed in trust *for as long a period as is legally possible,* the
    termination or ending of said trust to take place *when the law
    requires it under the statute.* I hereby nominate and appoint the
    Hawaiian Trust Company Limited, of Honolulu, Territory of Ha-
    waii, as trustee of the aforesaid balance, residue or remainder of
    my estate and they are to devote sufficient of the annual income
    derived from the same toward paying the following annuities,
    which are to be free and clear of all taxes, unto the following per-
    sons mentioned, namely," (here naming· some 42 annuitants. in-
    cluding the testator's heirs and next of kin, and fixing the amount
    of each annuity). "All of the foregoing for life, and then to.
    their heirs, save and excepted the last three persons, namely, Josie
    Fink, · Emma Douglass and Matilda Bailey, who are to receive
    only their life annuities and at their death all their interests to·
    cease. *On the final ending and distribution of the trust, the trust
    fund to be divided* equally amongst those persons entitled at the
    time to the aforementioned annuities." A codicil substituted an
    annuity to H. G. of "$300 yearly for life only" for the annuity of
    $360 given him in the will "to him and his heirs," also substituting
    an annuity to his children and their heirs of $2100 in place of

$2520 in the will, and giving the Kona Orphanage "$100 yearly, under the same conditions as the other annuitants mentioned, save and excepted" the four persons to whom were given life annuities only. Held: The will established a valid trust for payment from the income of the trust property of the annuities payable by the provisions of the will to the four persons therein named for their respective lives and for payment of the other annuities, payable by the will, to the other annuitants therein named, to themselves for and during their respective lives and thereafter to pay the same to their heirs respectively until the end of 21 years after the death of the last survivor of all of said annuitants and during the same period of time to pay to the Kona Orphanage the annuity directed in the will, and at the end of said 21 years to divide the trust fund and its accumulated and unapplied income as required by the will. The trust is implied for accumulation of the income not required for taxes and for costs and charges of administering the trust and for payment of the annuities. The testator's intention, to be ascertained from the various provisions in the will, was that the division of the trust fund, including therein the accumulated income, should be made by the trustee and that such division should be "the final ending and distribution of the trust;" also that the trust, meaning to include therein the division of the fund, was to terminate by such division "when the law requires it," being the period fixed by the rule against perpetuities at the end of the 21 years after the death of the last surviving annuitant. The will clearly intends the lives of the annuitants as "the lives of persons in being" under the rule against perpetuities which rule is law in Hawaii under Sec. 1, R. L.

CORPORATION—*incorporated under articles of association as joint stock company—capacity to take as trustee.*

In conformity with the view of the court expressed in *Hackfeld v. King*, 11 Haw. 5, the Hawaiian Trust Company, Limited, is lawfully authorized to do a trust business as mentioned in its articles of association.

### STATEMENT OF THE CASE.

This is a submission on a case agreed between the heirs of the late George Galbraith and the executors and trustee under his will asking adjudication of certain matters in controversy between them. The facts agreed upon are as follows: Galbraith, a native of Ireland and for many years next preceding

and at the time of his death domiciled in Honolulu, died November 5, 1904, leaving a will executed together with a codicil in Honolulu January 21, 1904, and admitted to probate March 24, 1905, before a judge of the first circuit. The executors, having paid the decedent's debts and the legacies, desire to distribute the residue of the estate to such persons or corporation as the court shall adjudge entitled thereto. The personal property in their hands consists of $57,424.54 cash, notes secured by mortgages of land and stocks in the Territory $17,500 and stocks and bonds of Hawaiian corporations appraised at $46,190, all aggregating $121,114.54, not including certain interest accrued. The decedent left real estate in this Territory, now in possession of the trustee, consisting of land at Wahiawa under lease for 50 years from September 17, 1900, at an annual rental of $10,000, appraised at $125,000 and land in Honolulu appraised at $3500. He left in Ireland a farm, held under an agreement to purchase under the Irish land purchase acts, valued at $3525, licensed premises valued at $940 and a dwelling house valued at $450. There was at the time of his death certain personal property belonging to him in Ireland, namely, a mortgage for $3300 upon two farms and $2350 cash with solicitors in Belfast. He died unmarried without leaving legitimate children. His heirs by the laws of this Territory are, according to the information and belief of the parties, his sister Eliza Fitchie, who has deceased testate since his death, and six children of his deceased brother Samuel Galbraith who, with the executors of the will of the deceased sister who are also her heirs and next of kin and sole beneficiaries under her will, are parties to the submission.

It is agreed that the rule in *Shelley's* case is law in Ireland where, by the rules of descent of real property and distribution of personal property of intestate estates, the heirs may not be the distributees and that, under the Irish law of distribution of intestate estates, land purchased under the land purchase acts is distributable as personal estate; that the Hawaiian Trust Company, named as trustee, is a corporation organized and

existing under the laws of this Territory and claims to be empowered under its articles of association to act as a trust company under the laws of the Territory respecting corporations and particularly under Acts 68 and 69 of the Laws of 1905 by virtue of the certificate issued to it by the treasurer of the Territory purporting to be in accordance with Sec. 1 of Act 69, copies of the articles of association and amendments and of the certificate being attached to the agreement.

The will provides for the payment of legacies of $500 to Anne Jane Galbraith and $250 to Minnie Galbraith, both second cousins; $500 to George Fitchie, a nephew's son; $250 to Polly Smith; $6,000 to be divided between the children of Samuel Galbraith, a deceased brother; $5,000 equally to the children of a sister, Eliza Fitchie; $2,000 to the children of a deceased sister, Sarah Patton; $2,000 to Susannah Galbraith, wife of a second cousin; $2,000 equally to the children of John Galbraith, a deceased first cousin; $1,000 each to two nieces, Martha Dickinson and Hannah Fitchie; $100 to Maude Fitchie, a nephew's daughter; $500 each to two nieces of Kittie Johnston; $1,000 each to Josie Fink and Emma Douglass, each of Alameda, California, to the nephew, Hugh Galbraith, Mannia, of Kalaca, Oahu, John Kailuli alias Galbraith, of Honolulu, and to Cecil Brown and H. M. von Holt, each of Honolulu; $250 to Lui Warren, of Ewa, Oahu; $500 each to Cecil Brown's sister, Mrs. Mackintosh and Helena Fonseca, each of Honolulu; $2,000 to Robert William Cathcart, of Honolulu, "or to his heirs if deceased"; $500 each to the five children of H. M. von Holt and to the five children of Robert William Cathcart, the legacies amounting to $36,850. Then come the portions of the will which give rise to the controversy, namely:

"The balance, residue or remainder of my estate is to be placed in trust for as long a period as is legally possible, the termination or ending of said trust to take place when the law requires it under the statute.

"I hereby nominate and appoint the Hawaiian Trust Company, Limited, of Honolulu, Territory of Hawaii, as trustee of

the aforesaid balance, residue or remainder of my estate and they are to devote sufficient of the annual income derived from the same toward paying the following annuities, which are to be free and clear of all taxes, unto the following persons mentioned, namely,

| | | | |
|---|---|---|---|
| Sam Galbraith's children, aforementioned, | | $1500. | yearly |
| Eliza Fitchie, | " | 1500. | " |
| Barry Fitchie's children, of Ballydrain, County Down, Ireland, | | 300. | " |
| Anne Jane Galbraith, aforementioned, | | 150. | " |
| Minnie Galbraith, | " | 150. | " |
| Sarah Patton's children, | " | 300. | " |
| John Galbraith's children, | " | 500. | " |
| Kittie Johnston's two nieces, | " (each) | 100. | " |
| Maude Fitchie, | " | 150. | " |
| Martha Dickinson, | " | 100. | " |
| Manuia, | " | 250. | " |
| J. Kailuli, alias Galbraith, | " | 250. | " |
| Robert William Cathcart's children, | " | 250. | " |
| Hugh Galbraith, | | 360. | " |
| Hugh Galbraith's seven children, | " | 2520. | " |
| Josie Fink, | " | 150. | " |
| Emma Douglass, | " | 150. | " |
| Matilda Bailey, Ballydrain, Co. Down, Ireland, | | 50. | " |

"All of the foregoing for life, and then to their heirs, save and excepted the last three persons, namely, Josie Fink, Emma Douglass and Matilda Bailey, who are to receive only their life annuities and at their death all their interests to cease.

"On the final ending and distribution of the trust, the trust fund to be divided equally amongst those persons entitled at that time to the aforementioned annuities."

The codicil revokes Hugh Galbraith's participation in any of the "bequests and benefits devised unto the children of the late Sam Galbraith" and substitutes for Hugh's annuity in the will of $360 for him and his heirs "$300 yearly for life only" and gives his children, in place of the $2520 in the will, "$2100 yearly for life" and then to their heirs; gives the Kona Orphanage of Kona, Hawaii, $100 "under the same conditions as the

other annuitants mentioned save and excepted Hugh Galbraith, Josie Fink, Emma Douglass and Matilda Bailey." The life annuities amount to $650, the other annuities to $7,700.

Upon these facts the parties ask for instructions and a construction of the will and the trust therein set forth in accordance with the following questions:

"1. Is the trust as to the residue of the estate wholly invalid?

"2. Is said trust wholly valid?

"3. If said trust is wholly valid, when does it end?

"4. If said trust is wholly valid, to whom and in what proportions is the trust fund payable upon the final ending of said trust?

"5. If said trust is neither wholly invalid nor wholly valid, what part of it is valid?

"6. Is there an intestacy as to any portion of the corpus of the residue of the testator's estate?

(a) Who are the heirs and next of kin of the testator and by what law are they to be determined?

(b) How is the intestate portion of the residue of the corpus and the amount thereof to be ascertained, and when and by whom can payment of such intestate portion be demanded?

"7. Is there an intestacy as to the annual income remaining after payment of the annuities bequeathed by the will, and, if so, to whom and in what proportions is said surplus income payable?

"8. If there is not an intestacy as to the surplus income annually accruing, to whom and when does it become payable; and what are the duties of the trustee relative thereto?

"9. What estates or rights do the annuitants specifically named other than those 'who are to receive only their life annuities,' and their 'heirs' respectively take under the trust?

"10. Who are the heirs of the annuitants and by what law are they to be determined?

"11. Are any or all of the annuitants under the trust entitled to claim appropriations from the corpus of the trust fund sufficient to produce their respective annuities, and the payment to them respectively of such appropriated portions?

(a) Upon what basis will the amount of the capital sum be calculated, and at what time or times can said annuitants so entitled, first demand such appropriations, and, second, call

upon the trustee to transfer to them respectively the shares of the corpus so appropriated?

"12. Can the Hawaiian Trust Company, Limited, act as trustee under the will?"

### CONTENTION OF THE EXECUTORS.

"The will directs that the residuary estate shall be placed in trust for as long a period as is legally possible, the termination of the trust to occur when the law requires it. It then defines the purpose of the trust, i. e., to secure the payment of annuities to named persons for life and then, with several exceptions, to their heirs. This is the entire purpose of the trust, for the will then directs that on the termination of this trust, the trust fund shall then go to the persons at that time enjoying the annuities in equal shares.

"The indefinite duration of a trust is not in itself an objection to its validity. Gray's The Rule against Perpetuities, Sec. 235, et seq.

"The duration of a trust is measured by its purposes.

"We have found that the sole purpose of this trust is to secure the payment of the designated annuities.

"The words of limitation of these annuities are as follows: 'All of the foregoing for life and then to their heirs.' These are words of limitation of an estate in fee in real estate,—under the Rule in *Shelley's Case*, of an estate in fee in the named persons; otherwise, of an estate for life in the named persons, with the remainder in fee to their heirs.

"Words of limitation which, if applied to real estate, would describe an estate in fee, will, if applied to an annuity, describe a perpetual annuity. *Smith v. Pybus*, 9 Ves. Jr. 566.

"Further, by express direction in the will, this trust is to continue as long as legally possible. The longest possible period of duration of this trust, in fact, would be forever. The only kind of annuities, and the designated annuities form, we have found, the entire purpose of this trust and therefore measure its duration, that could continue forever, would be perpetual annuities.

"Perpetual annuities may legally be created and a trust to secure their payment, otherwise unobjectionable; is legally valid. *Smith v. Pybus*, 9 Ves. Jr. 566; *Mansergh v. Campbell*, 3 De G. & J. 232, 60 Eng. Ch. 232; *Hedges v. Harpur*, 3 De G. & J. 129, 60 Eng. Ch. 129; *Yates v. Maddon*, 16 Sim. 613,

39 Eng. Ch. 613; *Stokes v. Heron,* 12 Cl. & F. 161; *Hicks v. Ross,* L. R. 14 Eq. 141; *Ex parte Wynch,* 5 De G., M. & G. 188; *Polter v. Baker,* 15 Beav. 489.

"Where the intention to create a perpetual annuity is found, a perpetual annuity will be held to have been created. *Mansergh v. Campbell,* 3 De G. & J. 232, 60 Eng. Ch. 232; *In re Morgan,* 1893, 3 Ch. D. 222, 229, 60 Eng. Ch. 129; *Stokes v. Heron,* 12 Cl. & F. 161.

"It follows, therefore, both from the words of limitation of the annuities and from the express direction of the testator, that the annuities bequeathed with the exception of several that are expressly limited for life, are perpetual annuities.

"By the terms of the will, the trust fund upon the termination of the trust, is to go to the annuitants entitled at the time of the termination in equal shares.

"This gift, if valid, constitutes an executory limitation on the prior gifts of annuities.

"Under the Rule against Perpetuities, a future interest, in order to be legally created, must be such that 'it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.'" Gray, 2d Ed. Secs. 201, 214 et seq.

"The Rule against Perpetuities must be taken to be in force in the Territory of Hawaii." Gray, Preface, Secs. 98, 200. R. L., Sec. 1.

"Here, then, to save the division clause from invalidity, it must appear that the trust to secure the payment of life and perpetual annuities, will necessarily terminate within the period of some life in being at the testator's death and twenty-one years thereafter.

"We have found that the trust in so far as the annuities are concerned, may continue forever. The only remaining beneficial interest under the trust is the surplus income. No express disposition being made of the surplus income, it, either, is undisposed of, or, follows the capital and must be accumulated. If the former, it is a vested interest belonging to the heirs of the testator, who may choose to permit the trust to continue as begun indefinitely or forever; if the latter, since the enjoyment thereof is conditional upon the termination of the trust, it is subject to the Rule against Perpetuities, and, to be valid, the termination of the trust must occur within the period defined by the Rule." Gray, Sec. 671.

"But we have found that the sole actual purpose of the testator in providing the trust was to secure the payment of annuities and this he directed should continue as long as legally possible.

"To hold an accumulation of surplus income directed, will necessitate one of two things:

"First: Since a trust for the payment of perpetual annuities need never terminate and it is only upon the termination of this trust that the division is directed to occur, therefore, in order to attribute an intention to the testator consistent with his actual intention of continuing the payment of annuities under the trust as long as legally possible, the intention to subject the surplus income to a possibly endless accumulation must be attributed to him. Or,

"Second: The entire trust must be limited, contrary to the testator's actual purpose, to some life in being and twenty-one years thereafter, a period shorter than a trust for the payment of such annuities as are here created might continue.

"The first would be to attribute an unreasonable intention to the testator and is unrequired by the authorities; the second, to defeat the testator's actual intention that the annuities should continue as long as legally possible, which we have found may be forever. Neither should be done.

"It follows that the surplus income is intestate.

"As the entire trust may then go on forever, its termination may occur beyond the limits fixed by the Rule against Perpetuities. The final division clause, depending for its consummation upon that event, therefore, violates the Rule against Perpetuities and accordingly is void.

"This leaves the trust for the payment of life and perpetual annuities as the only valid disposition made of the residuary estate; this must be dealt with as though the division clause had been omitted from the will." Gray, Sec. 247 et seq.

"What then are the specific rights in the residuary estate?

"Life annuitants are at the most entitled to have such an amount of the property upon which their annuities are charged as will be sufficient to secure with practical certainty the payment from its income of their annuities, set aside to secure the payment of their annuities. *Harbin v. Masterman,* 1896, 1 Ch. 351; *Healey v. Toppan,* 45 N. H. 243.

"A perpetual annuitant is entitled to the payment to him of an amount from the fund upon which his annuity is charged sufficient to produce the amount of his annuity in satisfaction

thereof. *Potter v. Baker,* 15 Beav. 489, 51 Eng. Rep. (Full Repr.) 627; *Bent v. Cullen,* L. R. 6 Ch. App. 235; *Hill v. Rattey,* 2 J. & H. 634, 1 Mew's Eng. Case Law Dig. 239; *Hicks v. Ross,* L. R. 14 Eq. 141; *Huston v. Read,* 32 N. J. E. 591; *Bradhurst v. Bradhurst,* 1 Paige (N. Y.) 331.

"The measure of sufficiency for the purposes of an appropriation to secure the payment of life annuities should be first class trust investments; the measure of sufficiency of the amount necessary to extinguish a perpetual annuity should be the legal rate of interest. *Nash v. Cutler,* 19 Pick. (Mass.) 167; 2 Cyc. 467-468 note.

"The uniform rule of descent of real and personal property in the Territory of Hawaii eliminates, except as to the small portion of real estate in Ireland, any question of marshalling. It follows, therefore, that with the noted exception, the trustee is only entitled to receive from the executors such an amount of the personal assets as may be required in addition to the real estate already held by the trustee to make up the amount required to secure the annuities and extinguish such of them as are perpetual."

### CONTENTION OF THE HEIRS.

"The rule against perpetuities, as part of the Common Law of England, is in force in this Territory." R. L., p. 83.

"The right to a part of the trust fund on the final ending of the trust, is a future interest subject to a condition.

"The will directs that the residue is to be placed in trust for as long a period as is legally possible.

"The question is: When will the trust end—the trust that is to end before the trust fund is to be divided?

"The law will allow the vesting of a future interest subject to a condition, to be postponed 'as long as any person living at the moment of the Testator's death was in existence and during twenty-one years after the longest liver of any person then in existence.' *Pownall v. Graham,* 33 Beav. 242, and the persons whose lives are taken need have no interest in the estate. Lewis on Perpetuities Chap. XIII p. 167; Gray On Rule against Perpetuities (2nd Edn.) §216. But as it would be '*impracticable* to ascertain' when the life of the last survivor of all persons in existence at the time of Testator's death would terminate (*Thellusson v. Woodford,* 11 Ves. Jr. 134 and 136); or, as such a number of lives are 'more than will admit of

making out by reasonable evidence at what time the survivor ceases to exist' (*Thellusson v. Woodford*, 4 Ves. Jr. 290); the direction or trust for division would 'tend to a perpetuity' and is therefore void. *Thellusson v. Woodford*, 11 Ves. 136.

"The Testator has not mentioned or indicated in his will any lives during which, and twenty-one years after, the division of the trust fund is to be postponed. The lives of the '40 odd' life annuitants named in the will cannot be taken, first, because Testator has not said they are to be taken and the Court cannot put words into the Will to give it such an effect, *Scale v. Rawlins* (1892) App. Cases 342, at 343; and, second, because he has said the division of the trust fund is to be postponed for as long as is legally possible. If the lives of the '40 odd' life annuitants and twenty-one years after is not 'as long a period as is legally possible,' that period does not answer the words of the will. If the lives of the '40 odd' life annuitants and twenty-one years after, is longer than is legally possible, it also does not answer the words of the will. As the will does not disclose what Testator meant by these words, the direction or trust for division is therefore void for uncertainty. *In re Moore* (1901) 1 Ch. 936.

"The case is distinguishable from *Pownall v. Graham*, supra, as there the gift over to one of the children explains what the words, to apply the income for the use of Testator's brothers' children 'from year to year as the law in such cases admits' (following a series of life estates) mean.

"The Court there could not have adopted any other construction without defeating the expressed intention of the Testator and destroying the meaning of the words of the will.

"It is also distinguishable from the 'heirloom' cases cited by counsel for the trustee, as they are supported either as in *Shelley v. Shelley*, L. R., 6 Eq. Cases 540, on the ground that the trust was executory; or, as in *Harrington v. Harrington*, L. R., 5 H. L. (Eng. and Irish App. Cases) 67, on the ground that, as the heirlooms are held in trust for the person who, for the time being, shall be in actual possession of a settled estate, (i. e. an estate subject to the limitations creating an estate tail), the limitations are perfectly declared.

"If the Court hold that the lives to be taken are pointed out by the will, that such lives are those of the 40 odd life annuitants, it is open to the Court to say that '40 odd' lives (including seven classes of lives) are more than it will allow to be taken. Gray on Perpetuities §218.

"The Common Law is not 'and has never been a fixed or rigid system.' The Rule against Perpetuities was laid down by the Courts. In laying down a rule that '40 odd' lives cannot be taken, the Court would be merely taking the first steps to the development or establishment of a salutary new principle (in harmony with existing principles) to meet a new case.

"If the trust to divide is void for uncertainty, the annuities to the heirs of the life annuitants named, which are to continue for as long a period as is legally possible, are also void for uncertainty.

"The cases cited in support of the contention that the fact that one of a series of gifts is void does not invalidate the preceding gifts, are those where the preceding gifts are certain, where an estate would be cut down if the ultimate gift took effect. This ultimate gift failing, the preceding gifts take effect. But the exclusion of the ultimate gift here does not get rid of the direction that the trust for payment of legacies is only to continue 'for as long a period as is legally possible.' "

## CONTENTION OF THE TRUSTEE.

"The Hawaiian Trust Company, Limited, trustee under the will of George Galbraith, contends that the trust provided for in the said will is wholly valid and that it is competent to act as trustee thereof; that the trustee takes the legal fee of the entire residue of the estate and that the beneficiaries named take the entire equitable interest in the trust fund, there being no intestacy either legal or equitable as to either principal or income; that the forty odd annuitants specifically named take annuities for their lives; that on the death of each annuitant other than the four 'who are to receive only their life annuities' his heirs take his annuity until final distribution; that the time for the termination of the trust and the final distribution of the trust fund is the expiration of twenty-one years after the death of the last survivor of the forty odd annuitants specifically named; that the trustee must keep the entire trust fund intact until the termination of the trust and the final distribution, and must accumulate the surplus income until that time and must then distribute the entire fund including the accumulated income to the persons entitled at that time to the annuities in proportion to the amounts of the annuities.

"The Trust Company believes that the foregoing construction of the will fully and accurately carries out the clear intention

of the testator and that it does not conflict with any rule of law and that therefore in accordance with the fundamental principles of the construction of wills it should be adopted.

"The gift of the 'trust fund' at the termination of the trust is clearly a provision of the trust, that is a gift of an equitable rather than of a legal future interest.

"The provision is not a direct gift to certain persons, but a direction to the trustee to *divide* the fund *equally* among a large number of persons. This 'division' is to be made on the 'distribution' of the trust. Who is to perform this 'division,' this 'distribution,' the trustee or the law? How could the law do it? All that the law could do would be to make the recipients tenants in common of the fund leaving them to divide it among themselves. Surely the testator could not have intended to make this large number of persons tenants in common of a great mass of mingled real and personal estate. He does not leave them undivided interests, but expressly orders division. He must have wished the trustee to make the division. There is then an active duty of division and distribution imposed upon the trustee.

"The payment of the annuities was intended to continue 'for as long a period as legally possible' consistent with the validity of all the provisions of the trust and not merely as long as that first part of the trust by itself might last, leaving the second part illegal and void.

"What did the testator mean by 'said trust'? Did he not undoubtedly mean the entire trust including the gift of the corpus? The intention of the testator would be needlessly thwarted by adopting the artificial construction urged by our opponents.

"The trust provides for the accumulation of the surplus income up to the time of the final distribution, the accumulated income being carried by the final gift of the 'trust fund.' Such an accumulation is valid only for the same period as that allowed by the rule against perpetuities, to wit, lives in being and twenty-one years thereafter. The trust as an entirety, even aside from the gift of the corpus at the final distribution, cannot continue beyond lives in being and twenty-one years thereafter. The testator cannot reasonably be held to have intended that the trust should be mangled and that the accumulation of income and the payment of the annuities should stop at different times.

"Unless the clauses of limitation are applied to the provision. as a gift of the accumulated income the gift will be invalid as too remote, the "testator's plan" for the accumulation will fail. and there will be an intestacy as to the surplus income. The same clause covers the original capital fund as well as the. accumulated surplus income and should be construed to have the same meaning and effect as to both."

As to the lives intended. "The lives of the forty odd annui-tants are expressly mentioned in the will and are also eligible, that is in being at the testator's death. Indeed the testator expressly takes them as measuring the term, for his first gifts are life interests for those very lives. The annuities are to continue for those lives and as long as possible thereafter. The gifts of the annuities to the 'heirs' of the specifically named annuitants are clearly within the rule against perpetuities because they must take effect at the end of lives in being.

"*Pownall v. Graham,* 33 Beav. 242; *Shelley v. Shelley,* L. R. 6 Eq. Cases, 540, 547-8," followed "*In re Johnston,* L. R. 26. Ch. Div. 538, 546-8.

"The number of the annuitants is no objection to the selection. of their lives. There is no limit to the number of lives which may be taken provided that it will be possible to find out by reasonable evidence when the last survivor dies.

· "Gray's Rule Against Perpetuities, Sec. 217 to 218; 1 Tif-fany on 'The Modern Law of Real Property,' Sec. 154 page 350; *Thellusson v. Woodford,* 11 Ves. Jr. 112, 134.

"It is therefore a question of construction whether there is an intestacy as to surplus income and so a resulting trust to the. heirs and next of kin of the testator or whether that income is to be accumulated and is to pass under the final distribution. There is a strong presumption of law against partial intestacy. Revised Laws, Sec. 2531.

" 'There is a strong presumption against intestacy as to a portion of the estate.' *Bertelman v. Kahilina,* 14 Haw. 372.

" 'The law prefers a construction which will prevent a partial intestacy to one that will permit it, if such a construction may reasonably be given.' *Given v. Hilton,* 95 U. S. 591, 594. See also 30 Enc. of Law 668.

"The intention of the testator is clear. He gives all the residue of his estate to a trustee and directs the trustee to devote a part of the income to paying certain annuities and then on the termination of the trust to divide up the trust fund. It is.

not as if there were no provision at all as to what should become
of the surplus income.

"There is a very strong presumption that he intended to pro-
vide in the will for the distribution of this income. The ques-
tion is then whether we can find in the will a sufficiently clear
expression of that intention. We maintain that we can, that
the gift of the 'trust fund' at the termination of the trust carries
the accumulated surplus income. The testator does not refer
back as he did once before to the 'aforesaid balance, residue or
remainder of my estate,' that is the original capital, but he says
'trust fund,' that is the whole trust fund including whatever
of capital or income it then contains.

"The testator says 'the balance, residue or remainder of my
estate is to be placed in trust for as long a period as is legally
possible.' Is not the natural meaning of that that the income is
to go with the capital? That both capital and income, the
entire residue, are to be held in trust as long as the law allows?
Each item of income coming into the hands of the trustee comes
in trust, by virtue of the trust in the will, and so necessarily
becomes at once ipso facto part of the *trust fund*.

"As matter of law a future gift of a mixed fund of personalty
and realty carries the intermediate income of the whole fund
where there is no express gift of the income, and that there is an
implied direction to accumulate the surplus income. Where
there is merely a future gift of the corpus with nothing to indi-
cate the intention of the testator as to the disposition of the
intermediate income, so that it is merely a question of legal
implication, of implied intent, a distinction has been drawn
between realty and personalty. A future gift of personalty
undoubtedly carries intermediate income, but the weight of
authority holds that a future gift of realty does not carry the
intermediate profits but that these go to the heir," but "when
the future gift is of a mixed fund of realty and personalty it
carries with it the intermediate income from the whole fund.

"Whenever any question as to the disposition of this mixed
fund of realty and personalty or any part thereof, or the income
therefrom, can be held to be a question of intention expressed
or implied, the question should be decided the same way as to
both realty and the personalty. The testator must have intended
that the realty and the personalty of his mixed fund should go
together. If he did not consciously so intend the law will imply
the intent for him.

" 'When personal estate is given to A at twenty-one, that will carry the intermediate interest. If a testator gives his estate Blackacre at a future period that will not carry the intermediate rents and profits. But when a testator mixes up real and personal estate in the same clauses the question must be whether he does not show an intention that the same rule shall operate on both. * * * * * * He does not, by his will create any trust but makes a legal devise and bequest of the whole together; then is not the weight of authority in favor of the proposition that when real and personal estate are given in this way the intermediate profits of both must go together? (i. e. should both be accumulated) I think it is.' Lord Eldon in *Genery v. Fitzgerald,* 1 Jac. 468.

"A testator gave the residue of his real and personal property to trustees to pay annuities and on the death of S. to convey to grandchildren, the surplus income being left undisposed of. The Court said:

" 'By the rule of the common law where there is a specific devise of a future estate and no disposition of the intermediate receipts and profits they go to the heir unless there is a residuary devise not future or contingent in which case they go to the residuary legatee. But a residuary bequest of personalty whether future or contingent carries the prior income and where real and personal estate are blended in one residuary gift the rule as to personalty governs. The same rules are applicable to trusts.' *Cochrane v. Schell,* 140 N. Y. 516, 537.

" 'If you find in one and the same clause in a will a gift of realty and personalty to go together to the same objects, then the rule is, that, if there are intermediate rents of the realty and intermediate income of the personalty which are not expressly disposed of, the rule with regard to personalty is followed, and the rents of the real estate must be accumulated in the same way as the income of the personal estate so as to go to the person who ultimately becomes entitled to the two funds.' *In re Dumble,* L. R. 23 Ch. Div. 360, 368.

" 'There is no principle better settled than that a general residuary bequest of personal property, contingent in terms, carries the intermediate income or interest, and that such income or interest will be required to accumulate and form part of the residue for the benefit of the party that may be ultimately entitled to such residue. This is the settled doctrine upon all the authorities. * * * * * * That being the rule in regard to executory bequests of residue of personal estate, the

rule is equally well settled that a blended gift or devise of a residuary real and personal estate, though contingent in terms, carries the intermediate rents and profits of the real estate, as well as the income of the personal estate. This has been regarded as the established rule ever since the leading case of *Stephens vs Stephens* and the subsequent case of *Gibson vs Lord Montfort.' Hurtford v. Haines,* 9 Atl. Rep. 540 (Md.)

"A testator gave 'all the residue of my real and personal property' to a trustee to pay an annuity and at a certain time to convey 'all my estate real and personal in the hands of my trustee aforesaid.' The surplus income was undisposed of. The Court treated the trust as including an implied direction to accumulate all the surplus income.' *Eberly's Appeal,* 110 Penn. St. 95; See also *Wagstaffe v. Lowerre,* 23 Barb. 209.

"The Hawaiian Trust Company, Limited, can act as trustee under the Will. Modern common law is clear that corporations can act as trustees if the purposes of the trust are 'Germane to the objects of the incorporation.'

"1 Clark & Marshall on Private Corporations, 150; *Vidal v. Girard,* 2 How. 127, 187.

"One of the principal purposes of the incorporation of the Hawaiian Trust Company, Limited, was to act as trustee in such cases as that of the Galbraith will. The fourth paragraph of the Articles of Association reads in part as follows:

" 'Third: That the purposes of the corporation are for doing such business and undertaking that it may in and by its corporate name take, receive and hold and repay, re-convey and dispose of any effects and property both real and personal, which may be granted, committed, transferred or conveyed to it, with its consent, upon any terms or upon any trust or trusts whatsoever at any time or times by any person or persons including married women or minors, body or bodies corporate or by any court; and to administer, fulfill and discharge the duties of such trust or trusts for such remuneration as may be agreed upon.'

"Any possible doubt there might have been on this question is removed by Act 69 of the Session Laws of 1905 which expressly gives the power in question.

" 'Section 4. Every Trust Company shall have power, in addition to the general powers conferred by law upon corporations and joint stock companies: (1) To take, receive and hold, and repay, reconvey and dispose of any effects and property, both real and personal, which may be granted, devised,

bequeathed, committed, transferred or conveyed to it, upon any trust or trusts whatsoever, at any time or times by any person or persons, including married women and minors, body or bodies corporate, or by any State, Territorial, Federal or Foreign Court or Judge, and to administer, fulfill and discharge the duties of such trust or trusts for such remuneration as may be agreed upon or provided by law, or that may be provided by law.' Act 69, Session Laws 1905.

"Moreover when property is devised to a corporation on a valid trust the state in its sovereign capacity alone has the right to inquire into the competency of the corporation to act as trustee. *Vidal v. Girard,* 2 How. 127, 191; See *Girard v. Philadelphia,* 7 Wall. 1, 14."

### OPINION OF THE COURT BY HARTWELL, J.

The rule against perpetuities is law in Hawaii, being a rule of the English common law which is declared in the Judiciary Act of 1892 (R. L., Sec. 1) to be in force here. By that rule the direction in Galbraith's will for a division of the trust fund is invalid unless by the provisions of the will the division must be made by the end of lives in being and 21 years thereafter. If the will, when construed with reference to all its provisions, requires perpetual annuities to be paid out of the income then the fund which is placed in trust for supplying the income cannot be divided and the direction is futile for dividing the fund at a time which might never arrive and, at all events, would be too remote under the rule. Unquestionably a trust can be created for payment from the income of a trust fund of annuities to certain persons for life and either to their heirs forever or for a term of 21 years after the death of the last surviving annuitant and providing in the latter case for division of the trust fund and accumulated income among the heirs at the termination of the trust. Now if the testator had meant that a division be made at the time required by law, and placed the residue in trust for that purpose, as well as to provide for the annuities, but did not know how long the trust would continue, meaning by "trust" not only the payment of the annuities but the division of the trust fund, might he not well have

said that the residue should "be placed in trust for as long a period as is legally possible," and that "the ending of said trust should take place when the law requires it," meaning that the fund should be divided then, or, as the will reads, "on the final ending and distribution of the trust"?

On the other hand, if he meant, as contended by the executors, to make perpetual annuities and to provide for a division of the trust fund only if and when the law should interfere and put an end to them, would he not naturally have made some direction for disposing of income which he must have foreseen might not be used for the annuities? If he meant that the annuities should continue to be paid as long as was legally possible what occasion was there to say that their payment should end when the law required? Does he not mean to include in the trust which is to be concluded then, something more than payment of annuities, namely, distribution of the fund? There is no reason to infer from his language that he thought that the residue might legally remain forever undisposed of or that he wished such result if it was legally possible.

"Questions of this nature, like all other questions arising upon wills, depend upon the intention of the testator, to be collected from the words of the will, not, of course, as I understand the law, in the sense that the Courts are to be governed by the strict literal interpretation of the words, but in the sense that they are to gather from the words the intention of the testator, and to gather it not by speculation or conjecture as to what the testator may have intended, but by a sound and reasonable construction of the words which he has used. In determining the question before us we must therefore, in the first place, carefully examine the dispositions of this will." *Hedges v. Harpur,* 3 De G. & Jones, 134.

"The first thing to be looked for is the intention of the testator, and that is to be collected from the tenor of the instrument—the motive, if any, disclosed—the object sought to be attained—and all the circumstances that appear to have been in the knowledge and mind of the testator. Even the use of artistic words, if used inartistically, in an inartistic instrument, will not necessarily control the intention otherwise manifested." *Sackville West v. Holmesdale,* 4 Eng. & Ir. Ap. Cas. 570.

"Moreover, it is against the settled rules of construction to strike out any words from a will because they offend against the perpetuity rule. For all purposes of construction, the will must be read as if no such rule existed. Any dispositions, which, so reading and construing it, are found to be the testator's wishes must be taken to be his wishes, and if those wishes offend against the rule, the gifts would fail, and must fail accordingly; but they are not the less part of his will, and to be resorted to as part of the context for all purposes of construction, as if no such rule had been established." *Heasman v. Pearse,* L. R. 7 Ch. Ap. Cas. 283.

To these established rules it may be added that in arriving at the testator's intention provisions are not to be disregarded merely because they lead to unforeseen results unless such results would be plainly subversive of the clearly expressed objects of the testator, in which case, if the words are fairly susceptible of a meaning which is consistent with those objects, that meaning ought to be preferred.

The will clearly expresses the testator's twofold purpose that the residue of his estate, after payment out of its income of certain annuities, should be distributed among those entitled to the annuities at the time of the distribution. There is nothing in the will to justify the inference that he meant that annuities should be payable to heirs indefinitely or forever or that "the said trust," the end of which was to "take place when the law requires it," included merely the payment of annuities. The trust was intended to accomplish the twofold purpose of payment of annuities and distribution of the trust fund coincident with the end of the trust.

The word "trust" is used in the will with different meanings, the direction that the residue is "to be placed in trust" meaning that the residue is given to the trustee afterwards appointed; the words "to be placed in trust for as long a period as is legally possible" meaning that the residue is given to the trustee to hold in trust for that period; the direction "the termination or ending of said trust to take place when the law requires it under the statute" meaning that the trustee's holding is then to terminate and the performance of its duties end. If the trust

fund is to be divided by the trustee when he ceases to pay annuities the law fixes the time when the division must be made by him. A trust to pay annuities as long as the law allows and then to divide the estate limits the time of the division if the words mean "as long as the law allows consistently with a division." This meaning would effect the testator's purpose that his property be divided while any other meaning which has been suggested would defeat that purpose and would either leave the estate to go to the heirs at once, or else subject to the annuities for life only if not also subject to perpetual annuities, the value of which could now be determined and paid over. In order to attach to the testator's language a meaning which would bring any of these unintended results it would be necessary to infer that he thought that there was some law which would terminate the annuity payments. While he had, as many persons have, a hazy notion about the duration of a trust, and may have thought it was to the trust instead of the gift over that a limit of time is made by the law, there is less reason for supposing that he was all wrong about this matter than for thinking that he meant to bring all his directions within the operation of the trust which he provided.

We construe the will then to mean that the residue was to be placed and held in trust as long as should be legally possible prior to its distribution and that the annuities should cease and the distribution be made ending the trust at the time required by law. There are many reasons for this construction in addition to those above mentioned. The expression "trust fund" implies that not merely the residue is intended to be divided but also the unapplied income accumulated at the time of the division. In *Draper v. Palmer,* 1 N. Y. Supp. 120, the same words, when used in a trust deed, were held to be "intended to embrace, not only the original property included in the trust, but any subsequent property that might have been added thereto, including also the accumulations." In *Olivat v. Wright,* L. R. 1 Ch. Div. 346 (1875), a devise was made to a husband for life "and after his decease to be divided amongst

my five children;" upon any of the children dying without issue the share of such deceased child was to be divided equally among the surviving children. Per James, L. J., "Can there be any doubt that 'after his decease' means the time when the estate for life comes to an end and when the property is to be divided? * * * According to the plain and natural meaning of the words this can only mean that immediately after his decease the executors and trustees are to see that her property is actually divided among her five children. * * * Any other construction would lead to so many absurdities and contradictions that I cannot bring myself to entertain any doubt whatever as to what the intention of the testatrix was."

As a matter, not of law only, but of presumed intention, undoubtedly the income of a gift of mixed real and personal property would go to the donee. It is urged that, since by Hawaiian statute the heirs of the realty who at common law would receive the income in such cases, if not otherwise disposed of, are the same as the distributees of the personal property of intestate estates, this court is at liberty to say that the income of the trust fund in this case, so far as not required for the annuities, would go to the heirs. This view would require the unused income of each year, varying, of course, as it might do from year to year, to be paid to the heirs. And we are asked to order that a sufficient sum be set aside to produce, on reasonable estimate, the income required for payment of the annuities and to direct that the residue of the trust fund be taken by the heirs as intestate property. The objections to this course appear to us to be insuperable. The entire residue is placed in trust for the purposes named by the testator and for an ultimate division, not merely of the residue, but of the trust fund, among the heirs of certain of the annuitants. The fact that at present so large a part of the income is not required for the annuities would naturally have led the testator, if he had wanted the surplus to be taken out of the trust fund and used for any other purpose, to have made his directions accordingly. There appears to us to be a clearly implied trust then

to allow the income to accumulate, but the accumulation of the income can continue no longer than the rule against perpetuities allows the postponement of the vesting of a gift of any other property.

We do not sustain the contention, which is strongly urged on behalf of the heirs, that there is uncertainty as to the lives in esse during which the final distribution of the trust property is to be held in abeyance. The courts having once held that a fee could be made to take effect upon the death of the life tenant and then when a child of the life tenant should become of the age of legal majority so as to be able to dispose of the fee, went on to hold, as is shown by the history of the development of the rule against perpetuities, that the fee could remain in abeyance during any number of lives in esse and that they might as well be lives of persons having no interest in the property, and, finally, that the vesting of the property might be postponed for a term of 21 years afterwards. In this case the lives clearly intended are those of the annuitants mentioned.

Concerning the right of the Hawaiian Trust Company to take as trustee, as held in the matter of the will of Stephen Girard, *Vidal et al. v. Girard's Executors,* 2 How. 126, "Neither the heirs nor any other private person could have any right to inquire into or contest the right of the corporation to take the property or to execute the trust." The statute, R. L., Sec. 2535, authorizes the incorporation of joint stock companies "for the purpose of carrying on any business or undertaking, either mercantile, agricultural or manufacturing," or a real estate business, "or otherwise, for which individuals may lawfully associate themselves (excepting banking and professional business)." This court held in *Hackfeld v. King,* 11 Haw. 5, that articles of association could properly include not only agricultural, manufacturing and mercantile pursuits but "the doing of all things and the transaction of all business that may be lawfully done in connection with the purposes aforesaid or any one of them," and said, "The businesses or undertakings which are forbidden by this statute and which the minister may

reject are those for which it would be unlawful for individuals to associate themselves, and banking and professional business." This would certainly authorize the incorporation of the Hawaiian Trust Company for the purpose of doing a trust business mentioned in its articles of association. We do not think that it would be proper now to adopt a different view of the statute.

We have thus answered in substance all the questions submitted which can now be settled. Whether the trust fund is to go to the heirs of the annuitants proportionately, meaning that the representatives of each annuity take the share of the fund determined by the ratio between the annuity and the aggregate sum of the annuities, or equally without regard to such ratio, are questions which cannot be adjudicated now.

There is and can be no controversy suggested between the heirs and next of kin of the sister Eliza, recently deceased, as they are the same persons. Under the decision in *Thurston v. Allen,* 8 Haw. 392, we have no occasion to consider the effect of the rule in *Shelley's* case if applied to the annuities payable to persons named and their heirs.

In reaching the foregoing conclusions we have received great assistance from the admirably clear and thorough presentation of the case which the attorneys of these parties have made. All the cases cited have been examined carefully although with few exceptions we have not thought it necessary to refer in our opinion to those which support the results we have reached nor to express, further than we have done, our reasons for declining to accept, as applicable to the facts of this case, the cases cited in support of opposite conclusions. We append to a statement of the case a full summary made by the parties of their contentions on the points herein decided.

A decree may be prepared conforming to our opinion above expressed.

*Holmes & Stanley* for the heirs.

*Smith & Lewis* and *C. H. Olson* for the executors.

*Ballou & Marx* and *R. B. Anderson* for the Hawaiian Trust Company.