HAWAIIAN TRUST COMPANY, LIMITED, TRUSTEE UNDER THE WILL OF GEORGE GALBRAITH, *v.* MARY McMULLAN, DAVID JOSEPH McVEIGH, A MINOR, MARIA VIRGINIA McVEIGH, A MINOR, SARAH DOCHERTY, DANIEL McVEIGH, MARY McCUTCHEON, PATRICK McVEIGH AND HELEN JOHNSTONE.

No. 1003.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

HON. C. W. ASHFORD, JUDGE.

ARGUED MARCH 26, 1917.          DECIDED APRIL 3, 1917.

ROBERTSON, C.J., QUARLES AND COKE, JJ.

ANNUITIES—*nature of interest of annuitant.*

Ordinarily a gift of an annuity to a person, without words of

limitation or other significant language is to be regarded as a gift of the annuity during the life of the annuitant, but where an annuity is given to one for a specified period of time, an intent is to be inferred that it was not to terminate with the life of the annuitant. Held, accordingly, that where property was given by will to a trustee to hold until the death of the last survivor of a number of annuitants and for twenty-one years thereafter, to pay certain annuities and to accumulate the unapplied income, and then divide the trust estate "among those persons entitled at that time to the aforementioned annuities," an annuity payable to the children of S. P. "for life and then to their heirs" the interest of the heirs in the annuity was for the entire period of the trust, and upon the death of one his share became payable to his heirs.

DESCENT AND DISTRIBUTION—*conflict of laws—succession of interest in personal property.*

The right to an annuity payable out of the income of a fund held in trust, being personal property, is distributable, upon the death of the annuitant intestate, according to the laws of the country where the decedent was domiciled at the time of his death.

### OPINION OF THE COURT BY ROBERTSON, C.J.

This is an appeal from a decree of a circuit judge sitting in equity in a suit instituted by the trustee under the will of George Galbraith, deceased, for instructions regarding the payment of a certain annuity as to which conflicting claims had arisen and as to the proper disposition of which the trustee was in doubt. We quote the following statement of the case and claims of the respective parties from the opinion of the circuit judge:

"George Galbraith, a former resident of this island, now deceased, by his last will and testament, duly admitted to probate in this court, devised and bequeathed to the plaintiff, Hawaiian Trust Company, Limited, an Hawaiian corporation, a large estate charged with certain trusts. Included among the trusts referred to, is the payment of annuities to some forty-seven annuitants named in said will. With reference to a large number of these, and which

include the annuities involved herein, they are bestowed 'for life, and then to their heirs.'

"The particular fund involved in this suit is a portion of an annuity (or annuities), bequeathed, by said will to 'Sarah Patton's children, $300.00.' The pleadings and proofs establish the fact that Sarah Patton had two children, who became entitled to said annuity in equal moities—viz., Robert Patton, a son, and Margaret McVeigh, a daughter. That Margaret McVeigh has since deceased, leaving six children her surviving. The deceased mother's share of said annuity ($150 per annum), was equally divided among her said six children, whereby each became entitled to, and until recently, received an annuity of twenty-five dollars. That William McVeigh, one of the said six children of Margaret McVeigh, died in the month of August, 1914, leaving him surviving, a widow, Mary McVeigh (now Mary Mc-Mullan), and two children, viz., David Joseph McVeigh, a son, and Maria Virginia McVeigh, a daughter, both minors, and for whom Charles S. Davis, Esq., an attorney of this court, was appointed guardian ad litem herein. The five surviving brothers and sisters of said William McVeigh, viz., Sarah Docherty, Daniel McVeigh, Mary McCutcheon, Patrick McVeigh, and Helen Johnstone, as well as the surviving widow and children of said William McVeigh (already named), were made defendants herein, and they have all made due and formal appearance and answer to plaintiff's bill. The bill asks the instruction of the court as to what disposition shall be made of the twenty-five dollar annuity heretofore paid to said William McVeigh, now deceased, and alleges that claim thereto is made by the said surviving brothers and sisters of said William McVeigh, as also by his widow and children. The said brothers and sisters of the deceased annuitant have appeared and answered jointly, and claim that, under the will, the 'heirs' of Margaret McVeigh (their mother), took said annuity of one hundred and fifty dollars, in succession to their said mother, as joint tenants, and that therefore, upon the decease of William, the share heretofore pertaining and belonging to him, goes to his brothers and sisters, as such joint tenants, in equal parts. Mary McMullan (widow of the deceased), answers separately, and claims that the language of the

will, bequeathing the several annuities to the annuitants therein named 'for life, and then to their heirs,' conferred upon the six children of Margaret McVeigh, absolute interests in her share of said annuity, in the proportion of one-sixth to each of them; and that it follows, as an incident of said absolute ownership and interest, that they, or any of them, might have disposed of their several interests therein, or, having failed to so dispose of the same, either by assignment or by will, their respective shares and interests will be disposed of according to the statute of descent, of Hawaii. The deceased, William McVeigh, made no disposition, by will or otherwise, of his share or interest in said annuity, and, according to the claim of Mary McMullan, it should now be disposed of as personal property, under the laws of succession of the Territory of Hawaii. The result of this reasoning would be that one-third thereof would go to his widow (now Mary McMullan) by way of dower, and, the remaining two-thirds be divided equally between his two children above named, and who are herein represented by Mr. Davis as their guardian *ad litem*. Involved in this claim, also, is the further claim that, even though it should be held that the laws of succession or inheritance prevailing in Hawaii do not apply in this case, because of the British citizenship and Scottish residence of William McVeigh, yet by the laws of Scotland (proven to the satisfaction of the court by the deposition of a Scottish lawyer, on file herein), one-third of the share or interest of the deceased would go to his widow by descent, and not by way of dower. In short, the claim is, that Mary McMullan takes an absolute one-third in the share or interest of her deceased husband, whether the law of Scotland or the law of Hawaii be found to be applicable to the case, the sole difference being that under the Scottish law, she would take as an heir, while, under Hawaiian law, she would take as a dowress. This is also the view taken by counsel for the plaintiff, who have filed a brief, in supplement of their oral argument. The remaining claim is that advanced by the guardian *ad litem* on behalf of the minor children of the deceased, and is to the effect that the word 'heirs' as used

in the phrase above quoted from Galbraith's will, means, first, the heirs of Margaret Patton McVeigh, the first taker, —second, the heirs of Margaret Patton McVeigh's heirs respectively, and so on, *ad infinitum,* during the term provided for the existence of the trust, which is the life of the survivor of the annuitants, *plus* twenty-one years thereafter."

The circuit judge held that upon the death of William McVeigh his share of the annuity became payable, one-third to his widow, now Mary McMullan (either as an heir under the law of Scotland, or by way of dower under the law of Hawaii), and one-third to each of his two children, David and Maria, and their respective heirs or assigns.

By his will, the testator, after providing for the payment of a number of legacies, left the residue and remainder of his estate to the Hawaiian Trust Company, Limited, in trust "for as long a period as is legally possible, the termination or ending of said trust to take place when the law requires it under the statute," and "to devote sufficient of the annual income derived from the same toward paying the following annuities." Then followed a list of annuitants and the amounts of the annuities—some of them payable, as in this case, to a class—including "Sarah Patton's children, $300, yearly." Then the testator said, "All of the foregoing for life, and then to their heirs, save and except the last three persons, namely, Josie Fink, Emma Douglass and Matilda Bailey, who are to receive only their life annuities and at their death all their interests to cease. On the final ending and distribution of the trust, the trust fund to be divided equally amongst those persons entitled at that time to the aforementioned annuities."

The validity of the trust as one to continue until the death of the last surviving annuitant of those designated in the will and for the period of twenty-one years thereafter, at which time the trust fund with accumulated and un-

applied income is to be divided and distributed, was sustained in *Fitchie* v. *Brown,* 18 Haw. 52; affirmed in 211 U. S. 321.

It is conceded that the children of Sarah Patton took the annuity in equal shares for their respective lives only, and that the word "heirs" in the phrase "and then to their heirs," is a word of purchase. The question is as to the quality of the interest which the heirs take under the clause above quoted. The intent of the testator is to be found in the language of the will taken as a whole. Ordinarily a gift of an annuity to a person, without words of limitation, or other significant language, is to be regarded as a gift of the annuity during the life of the annuitant; and a gift of an annuity to one for life, and then to another, is understood to mean to that other for life unless a different intent is indicated. And it has been held in several cases that where an annuity is given to one for a term of years or for the life of another, an intent is to be inferred that it is not to terminate with the life of the annuitant. See 3 C. J. 205, 206; 2 A. & E. Enc. Law (2d. ed.), 393. In the case at bar the gift to the heirs of Sarah Patton's children was without words of limitation, but as it is evident from the final clause in the will that the testator intended that those heirs (their representatives or heirs) should be included in "those persons" among whom the corpus of the estate would be divided an intent on his part is fairly inferable that the annuities given to the heirs were not to terminate at their respective deaths. In other words, that the annuities were given to them for the period during which the trust was designed to continue. There is no legal obstacle to the carrying out of that intent. See *In re Follett,* 23 R. I. 409; *Stevenson* v. *Stevenson,* 91 Ky. 50; *Merrill* v. *Bickford,* 65 Me. 118; *Montanye* v. *Montanye,* 51 N. Y. S. 538; *In re Shuford,* 164 N. C. 133; *Goodyear etc. Co.* v. *Dancel,* 119 Fed. 692; *Robinson* v. *Hunt,* 4 Beav. 450. In the case of

*In re Ord,* L. R. 12 Ch. Div. 22, where it was held that an annuity given to the testator's son during the lifetime of the widow, upon the death of the son in the lifetime of his mother, became payable to his personal representatives until the death of the widow, James, L. J., said (p. 25), "It has never been doubted that a gift of an annuity for a term or *pur autre vie* is a gift to the annuitant and his personal representatives during the term or the life of the *cestui que vie.*" And in *Blight* v. *Hartnoll,* L. R. 19 Ch. Div. 294, 296, Mr. Justice Fry said, "As a general rule there can be no doubt that the gift of an annuity to A, is a gift of the annuity during the life of A and nothing more. It is equally free from doubt that where the testator indicates the existence of the annuity without limit after the death of the person named, and therefore implies that it is to exist beyond the life of the annuitant, there the annuity is presumed to be a perpetual annuity."

There is considerable discussion in the briefs as to whether it was decided in the case of *Thurston* v. *Allen,* 8 Haw. 392, that in case of a deed or will of property to two or more persons they take as tenants in common unless it be expressly declared to be a joint tenancy, applies to personal property as well as to real estate. Counsel for the brothers and sisters of William McVeigh argues that that case did not so decide, and that the common law presumption in favor of joint tenancies should be applied here. But as by the statute of descent (R. L. 1915, Chap. 179) the personal property of an intestate goes to the same heirs as his real property we think it follows that a like presumption in favor of tenancies in common should apply to personal property and that in order to avert the statutory course of descent a title by joint tenancy should be affirmatively shown. See *Zupplein* v. *Austin,* 6 Haw. 8. The natural inference to be drawn from the language of this will is that the testator intended that the heirs should take the an-

nuities in equal shares, and we find no indication that he contemplated that only those who should be the survivors in each class, and their descendants, should succeed to the annuities and share in the division of the corpus of the estate to the exclusion of the children or other heirs of those who may have previously died.

The contention advanced on behalf of the children of William McVeigh to the effect that the word "heirs" as used in the clause above quoted includes heirs of heirs in successive life interests, the heirs to be determined by the statute of descent of Hawaii, and, therefore, including William's children but excluding his widow, cannot be sustained. The gift was to the heirs of Sarah Patton's children. The heirs of Margaret McVeigh were those who at the time of her death would inherit from her under the statute of descent, namely, her children. William's children, William being alive when his mother died, were not heirs of Margaret.

The interest of William McVeigh in the annuity, then, was for the entire period of the trust if he should live till the arrival of the time for the distribution of the estate, and, if not, for his heirs or personal representatives during the life of the last survivor of the annuitants and for the further period of twenty-one years.

In several of the cases above cited the annuity was held to be payable to the executor or administrator of the deceased annuitant, while in *Stevenson* v. *Stevenson* it was held to be payable to the annuitant's children. No question in this connection has been raised in this case. William McVeigh died intestate, but it does not appear that he left any debts or that an administrator of his estate was appointed. We assume, therefore, that his heirs may properly take directly.

The heirs of Margaret McVeigh would be determined by the law of descent of this Territory (*Hawaiian Trust Co.*

*v. Galbraith,* 22 Haw. 78) but the persons to take the share of her son William upon his death would be determined by the law of Scotland, his place of domicil. *Eidman* v. *Martinez,* 184 U. S. 578, 581; *Yore* v. *Cook,* 67 Ill. App. 586; *Brewer* v. *Cox,* 18 Atl. (Md.) 864; *Gibson* v. *Dowell,* 42 Ark. 164; *Lawrence* v. *Kitteridge,* 21 Conn. 576. "It has become a settled principle of international jurisprudence, and one founded on a comprehensive and enlightened sense of public policy and convenience, that the disposition, succession to, and distribution of personal property, wherever situated, is governed by the law of the country of the owner's or intestate's domicile at the time of his death, and not by the conflicting laws of the various places where the goods happened to be situated. The principle applies equally to cases of voluntary transfer, of intestacy and of testaments." 2 Kent Com. 428. It was shown that by the law of Scotland the widow would take as heir a portion of the annuity equal to that of each of the decedent's two children. It is not necessary to consider the question whether, if the law of Hawaii (R. L. Sec. 2977) applied, the widow would take an absolute interest in one-third of the annuity by way of dower or the further question whether in this jurisdiction a widow may have dower in an equitable interest in property.

We hold that the circuit judge was right in directing the trustee to pay the annuity previously paid to William McVeigh to his widow and two children, as his heirs, one-third to each.

The decree appealed from is affirmed.

*B. Knollenberg (Frear, Prosser, Anderson & Marx* with him on the brief) for plaintiff.

*A. Perry* for Mary McMullan.

*A. G. Smith* for the brothers and sisters of William McVeigh.

*C. S. Davis,* guardian *ad litem,* for the minor children of William McVeigh.