## BISHOP TRUST COMPANY, ADMINISTRATOR OF THE ESTATE OF HAROLD GORDON SPENCER, DECEASED, *v.* GEORGE W. THOMAS, ET AL.

No. 1995.

ARGUED APRIL 14, 1931.  DECIDED OCTOBER 14, 1931.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PARSONS, J.

This is a suit in equity brought by the Bishop Trust Company, Limited, as administrator of the estate of Harold Gordon Spencer, deceased, for the determination and declaration of the heirs at law of said decedent. After summons, order of substituted service upon and notice to the interested parties, after answer filed by the respondents Ada Spencer Meyers, Cora Belle Champney, Alfred C. Phelps, Charles B. Phelps and Carrie M. Mitchell, and after a hearing, the trial judge filed a written decision wherein he found, among other things, that "the evidence herein shows conclusively that the estate of this decedent came to the decedent, with a negligible exception, from his mother" and concluded that under the provisions of section 3305, R. L. 1925, the persons entitled to take the estate of decedent (with an exception not herein involved) are the respondents Alfred C. Phelps and Charles B. Phelps, surviving first cousins of decedent's mother. A decree was entered in conformity with the decision above referred to, from which decree two of the respondents, namely, Ada Spencer Meyers and Cora Belle Champney, have appealed to this court.

Facts found by the trial judge, set forth in his decision and/or the decree and not in dispute, are in part and in effect as follows: on May 31, 1927, Harold Gordon Spencer, whose last domicile was in Honolulu, died intestate in the Territory of Hawaii, leaving therein property, a schedule of which appears in the decree, which

schedule may be briefly summarized as follows: real property, lot 4, block 18, Kaimuki tract; personal property, household furniture and fixtures, stocks, bonds, notes and cash on hand with the Bishop Trust Company. The stocks consist of two items, namely: 30 shares of the capital stock of Ewa Plantation Company and 575 shares of the capital stock of the Oahu Railway & Land Company, both blocks having come to the decedent by bequest under the last will and testament of his mother, Isabel Spencer. The Kaimuki property, bonds, notes and cash on hand enumerated in said decree were obtained by decedent by the investment and reinvestment of other and additional personal property bequeathed to him by his mother and the rents, issues and profits of the Kaimuki property and of the capital stock of the railway and plantation companies above referred to, and of said investments and reinvestments. Decedent died unmarried, leaving no issue, nor father, mother, brother, or sister, nor any descendant of a deceased brother or sister. The four respondents, Ada Spencer Meyers, Cora Belle Champney, Alfred C. Phelps and Charles B. Phelps, are decedent's surviving next of kin and are all related to him in the same degree of consanguinity, the two former through descent from decedent's paternal great-grandparents and the two latter through descent from the decedent's maternal great-grandparents. Decedent's father was James Gordon Spencer. Respondents Ada Spencer Meyers and Cora Belle Champney were James Gordon Spencer's first cousins. Respondents Alfred C. Phelps and Charles B. Phelps were the first cousins of decedent's mother, Isabel Spencer. Isabel Spencer had two brothers, Chester Thomas and Edward Thomas. It is stipulated by appellants and appellees "that Chester Thomas and Edward Thomas predeceased their sister Isabel Thomas Spencer and left surviving them no issue, nor father, nor mother, nor

widow, nor brothers, nor sisters with the exception of Isabel Thomas Spencer and no children of a deceased brother or sister."

The questions presented by the appeal are questions of law and not of fact. The contest arises under section 3305, R. L. 1925, which, after setting forth the rules of descent to different relatives in different named events, provides, "if the intestate shall leave none of the said relatives surviving, nor widow, nor husband, the estate shall descend in equal shares to the next of kin in equal degree, but no person shall be entitled, by right of representation, to the shares of such next of kin who shall have died; provided, however, that if the estate come through either parent of the deceased intestate, the brothers and sisters of that parent and their respective heirs shall be preferred to those of the other parent." Appellants' brief sets forth six "assignments of error" which are grouped for purposes of argument. For the purpose of this opinion the questions argued may for convenience be briefly summarized as follows: First, is property which has been acquired by a person in exchange or through sale of property theretofore received by him as a bequest under the will of a deceased parent, an estate coming to said person through said parent within the purview of section 3305, R. L. 1925? Second, is property purchased with the rents, issues and profits of such bequest an estate coming to the beneficiary through his parent within the meaning of said statute? Third, in the circumstances set forth in this opinion, if the property scheduled in the decree or any part of it came to Harold Gordon Spencer through his mother, are the appellees alone or are the appellants and the appellees jointly the heirs of the deceased brothers of Isabel Spencer, to whom preference is given as to said property by the paragraph above quoted from section 3305, R. L. 1925?

144

1 and 2. Questions 1 and 2 may be considered together. The question set forth in paragraph 1 is usually treated under the subhead "ancestral estates" and it is under this analogy that the parties have chosen to argue it. At common law the term appears to have been confined to real property. "The policy of the common law was to keep the real property in the line of the ancestor by whom it was brought into the family, and after failure of lineal descendants of the last owner the land passes to his collateral relations, provided they are of the blood of the first purchaser by whom it came to the intestate." 9 R. C. L. 36. "Generally the statutes relating to the descent of ancestral estates do not cover personal property." L. R. A. 1916-C, p. 935. However, our statutes of descent make no distinction between personalty and realty. Section 3302, R. L. 1925, provides for the descent to the intestate's heirs of his property "both real and personal, of every kind and description, * * * as in this chapter prescribed." Thereafter the property descending is not referred to as either realty or personalty, but is referred to either as property or as estate.

"In this Kingdom real as well as personal estate of an intestate descends together by the same statute to a person's heirs, there being no distinction between the descent of realty and personalty. We must bear this in mind, for many of the cases cited are from states where the 'heirs' take real estate but the personal estate is distributed to the 'next of kin,' according to the statute of distribution." *Thurston* v. *Allen,* 8 Haw. 392, 404. See also *Haw'n Trust Co.* v. *McMullan,* 23 Haw. 685, 691, and *Dreier* v. *Holt,* 18 Haw. 179, 182. The ancestral features of our statutes of descent being therefore wide enough to cover both real and personal property, of persuasive influence are the decisions at common law and under statutes similar to our own, in aiding us to determine

what constitutes an ancestral estate, and whether or not the law transfers ancestral characteristics to property acquired by the heir through the sale or exchange by him of the original ancestral property. In Coke upon Littleton, L. 1, C. 1, Sec. 4, Lord Coke says: "If a man be seised of lands as heire of the part of his mother, and maketh a feoffment in fee, and taketh backe an estate to him and to his heires, this is a new purchase, and if he dyeth without issue, the heires of the part of the father shall first inherite." So in *Doe* v. *Morgan,* 7 Tr. 104, 101 Eng. Repr. 878, quoting from the syllabus, "One seised in fee of a copyhold of inheritance by descent *ex parte materna* surrendered the same to the use of himself for life, remainder to such persons and for such estates as he should by deed or will, attested by three witnesses, appoint, remainder in default of appointment to himself in fee; after which he made a mortgage and surrendered to the use of the mortgagee in fee, who, upon repayment of the principal and interest, surrendered again to the mortgagor; held that the line of descent was thereby broken, and that the estate descended to the paternal heir." In 18 C. J. 819, under the title "Descent and Distribution," after discussing "what constitutes ancestral estates or new acquisitions," the text continues: "On the other hand, property of the intestate does not possess an ancestral quality where it was acquired by the intestate with the proceeds of ancestral property, or where the property was acquired by exchanging ancestral property therefor." To the same effect is 9 R. C. L. 38, par. 31, under the subhead "Considerations Determinative of Ancestral Character." 2 Tiffany, Real Property, § 494, p. 1905; and annotations "Ancestral Estates," L. R. A. 1916-C, pp. 910, 913.

Of the states wherein, as in this Territory, both realty and personalty follow the same rule of descent, Indiana

146

is frequently referred to in the texts. Quoting from 18 C. J. 819: "While the personal property of a decedent is generally distributed without reference to the source of title of the intestate, and statutes of descent which recognize the source from which the property came are generally construed not to apply to personal property, the Indiana statutes providing that an inheritance which came to the intestate by gift, devise, or descent shall descend in a certain way are applicable to personal property, provided it remains in specie and passes in the same form in which it was inherited, that is, while a change in the form of the property by the administrator does not deprive the property of its ancestral quality, a conversion, reinvestment, or other change of the original form and quality of the property during the lifetime of the intestate deprives it of its ancestral quality so that it comes under other statutory provisions." One of the cases cited in support of the foregoing text is that of Rountree v. Pursell, 11 Ind. App. 522, 39 N. E. 747, 753, a leading case relied upon by the appellants. Quoting from the case last above cited: "We have somewhat reluctantly reached the conclusion that it was the legislative intent, in the distribution of personal property, to have a regard for the line of blood from which it came. There may be cases where hardships and seeming injustice result, but many intestates leave large personal estates with few debts. The heirs may make division among themselves upon the lines adopted by the law, and, if any part of the personalty is ancestral, it may so descend or be divided. But personal property, like real estate, in order to retain its ancestral character, must remain and descend in specie. It must be the same thing that came from the ancestor; the same parcel of real estate; the same article of personal property. If real estate which descends to the heir be exchanged for other real estate,

or sold, and its proceeds invested in other real estate, the newly-acquired realty loses its ancestral quality. *Armington* v. *Armington*, 28 Ind. 74; *Murphy* v. *Henry, supra; Abshire* v. *State*, 53 Ind. 64; *Henson* v. *Ott*, 7 Ind. 512. The same rule applies with equal, if not greater, force to personal property." Because of the similarity of conditions under our statutes of descent to those in the state from whose reports the foregoing citation was made, the reasoning and conclusions reached in the case last above cited seem to be far more applicable locally than do those set forth in the case of *Pickens* v. *Merriam*, 274 Fed. 1, 11, relied upon by the trial judge. In the case last above cited the court was construing the California statute of descent and was following, as it was bound to do, the decisions of the state courts on that subject. It cited and followed as a controlling case *In re Brady's Estate*, 171 Cal. 1, 151 Pac. 275, which dealt with the devolution of community property. This is shown in the following excerpt: "The supreme court of California has given construction to the first paragraph of subdivision 8 which has relation to community property (*In re Brady's Estate*, 171 Cal. 1, 151 Pac. 275), and the construction, it is obvious, is alike applicable to the latter paragraph. After the death of the spouse, if there be no issue, the property, if community property, the whole of it, becomes that of the surviving husband or wife, as the case may be, to deal with as though it were his or her own, and the heirs of the deceased spouse have a bare expectancy, which becomes effective, or ripens into an inheritance, at the death of the surviving spouse, and then only as to such of the property as he or she at that time possessed or owned. The surviving spouse may dispose of the property, or any part thereof, in any way desired, during his or her lifetime, and may even make testamentary disposition of it. *In re Hill's Estate*, 179 Cal. 683, 178 Pac. 710. The

mere fact that the property has changed its form, type, or character, because of substitution of other property, does not affect the inheritance; but if the property is so commingled with the survivor's other property that its identity cannot be traced, then, of course, inheritance by the heirs of the deceased spouse could not attach." That the California decisions on this subject are to be differentiated from those of other jurisdictions having no community property system is recognized by the California courts themselves. Quoting from *Estate of Brady, supra,* pp. 5, 7: "It is a familiar doctrine in this state that property does not lose its character or status as separate or community property, by a mere change in form or identity, because of a substitution of other property in the usual manner of sale or exchange, and that interest, rents, or profits therefrom retain the character in this respect of the property from which they are derived. * * * Certain cases from other states are cited by appellant in support of its position that the statutory provision applicable here applies only to the 'identical property' constituting common property at the death of the predeceased spouse, and does not include property received by the surviving spouse in exchange therefor, or any rents, issues, or profits. Of these decisions it is to be said that none involved the precise question we have here, in view of our community and separate property system and the well-settled rules in regard thereto. It is in the light of the well-understood policy in this matter that our statute is to be construed." *Pickens* v. *Merriam,* which was controlled by the decision in *Estate of Brady,* therefore, is not authority for the rule of descent and distribution announced by the trial judge in the case at bar and contended for by the appellees in this court, except as it affects the property of spouses under the law of California.

What has been said in the foregoing discussion of question number 1 with reference to realty and personalty not part of the mother's estate and acquired by the intestate through sale of property bequeathed him and by investment of the proceeds, applies with still greater force to property bought in part with rents, issues and profits. Even if the rents, issues and profits could be construed to be part of the estate coming to the intestate through his parent within the meaning of section 3305 (which we do not decide), they have lost their identity just as effectively as has the corpus from which they were realized and they cannot be followed to the new acquisitions.

3. What has been said above in the discussion of questions 1 and 2 applies to all of the property scheduled in the decree, with the exception of the 30 shares of Ewa Plantation Company capital stock, evidenced by certificate No. 15339, and 575 shares of Oahu Railway & Land Company's capital stock, evidenced by certificate No. 309. To the latter two items it does not apply. The property which they include, as found by the trial judge, is in the identical form in which it was received by Harold Gordon Spencer by bequest from his mother. This property, therefore, descends under the above quoted provision of section 3305 and, so far as it is concerned, "the brothers and sisters of that parent and their respective heirs shall be preferred to those of the other parent." Appellants urge that the statute prefers said parent's brothers and sisters and their descendants only, and does not contemplate devolution in an ascending line. Under the Laws of 1872 apparently the preference extended no farther than the brothers and sisters. The proviso then read: "Provided always that if the estate shall come through either parent, the brothers and sisters .of that parent shall be preferred to the others." Under this statute it was held in 1874 in *Estate of Kualii*, 8 Haw. 612

150

(quoting from the syllabus) : "The statute of descent of property provides for the ascent of property no further than the parents and the brothers and sisters of such parents of a deceased intestate. A cousin of the father of an intestate (deceased) is of the fifth degree of kindred and cannot inherit." In 1898, however, the foregoing proviso was amended to its present form and the preference was then extended to the respective heirs of such brothers and sisters. At the time of the death of Harold Gordon Spencer neither Chester nor Edward Thomas was alive. The ancestral part of Spencer's estate, therefore, passed at that time, under the present statute, to the heirs of his two uncles above named. Within the meaning of the statute, who were the heirs of Chester and Edward Thomas? If that question were determinable (as it is not) with reference to property owned by them at the date of their respective deaths, the answer, based upon the above recited proof, would be that their sole heir at law was their sister, Isabel Spencer, in which event, if there were no other qualifying circumstances, the devolution would be from Isabel Spencer to Harold Gordon Spencer, and upon the latter's intestacy at death to his nearest of kin, the appellants and appellees, in equal undivided shares. But at the time of the deaths of Chester and Edward Thomas they had no interest whatsoever in the property now under discussion. If their sister had made a will devising and bequeathing a life interest in her estate to her son, Harold Gordon Spencer, remainder in fee (in the words of the statute) to her "brothers * * * and their respective heirs," the language of our former decisions would apply, namely, that "where under the provisions of the will a gift to a class is postponed either to a particular time or pending the termination of a preceding estate * * * those members of the class and those only take who are in existence at the arrival of the

time for distribution, as at the death of the life-tenant, unless the particular language used confines the gift to those in existence at the testator's death or who are in existence at the date of the will." *Auld* v. *Andrade,* 31 Haw. 1, 5, quoting 40 Cyc. 1477-1479.

In *Motors Co.* v. *Nalaielua,* 31 Haw. 418, 422, this court, in defining the meaning of the word "heirs" as used in a trust instrument then before it, said: "Ordinarily that word means those who under the law would take the property of a decedent at his death, but the word is susceptible of the meaning, and it has often been so construed by courts, that those are intended to take who would be the heirs at a later named period of distribution if the testator or grantor had lived to that time." Again, in *Re Trust of Dreier, ante,* p. 32, it was held (quoting from the syllabus) that "when a conveyance is made to a trustee upon trust to hold and manage the property, to pay net income to certain named persons until the death of the survivor and at the end of the trust period to convey the corpus of the property (in the event of the failure of certain other described beneficiaries) to the 'heirs at law' of a named person, the heirs at law of the person named are determinable not as of the date of his death but as of the end of the trust period,—in other words, are those persons who would be the heirs if the person named had died at the end of the trust period instead of, as actually happened, prior thereto." The foregoing rules of construction, applied in the cases cited to wills and trust deeds, are equally applicable to statutes; and applying them to the proviso of section 3305 now under consideration we find that the word "heirs" as used therein refers to persons living at the time of the death of the intestate who would then have been the heirs of the intestate's parent's deceased brother or sister, if said brother or sister had died at that time. Applying

the foregoing rule to the facts in the instant case: Chester Thomas and Edward Thomas (uncles, on the maternal side, of Harold Gordon Spencer) predeceased the latter. At the time of Harold Gordon Spencer's death there were no surviving relatives of his deceased uncles legally entitled to inherit from them, or either of them, except under the concluding paragraph of section 3305. Under that provision their estate descended in equal shares to their next of kin in equal degree, no person being entitled by right of representation to the shares of such next of kin as had died. Their next of kin then living were their first cousins, Alfred C. Phelps and Charles B. Phelps, to whom the portion of the estate now under discussion therefore descended in equal shares under the above-quoted provision of section 3305.

We therefore conclude that under the statute of descent Alfred C. Phelps and Charles B. Phelps are entitled in equal shares to the 30 shares of capital stock of the Ewa Plantation Company and to the 575 shares of the capital stock of the Oahu Railway & Land Company, received by the intestate under bequest from his mother, and scheduled in the decree of the trial judge, and that the heirs at law of Harold Gordon Spencer as to the residue of his estate set forth in said schedule are Ada Spencer Meyers, Cora Belle Champney, Alfred C. Phelps and Charles B. Phelps, who are entitled to receive the same in equal shares.

The decree appealed from is reversed. A decree in conformity with the views above expressed will be signed upon presentation.

*J. V. Hodgson,* for *E. C. Peters,* argued the case for complainant, but filed no brief.

*A. Withington* (*Robertson & Castle* on the briefs) for respondents Ada S. Meyers and Cora B. Champney.

*M. E. Winn* (*Thompson, Beebe & Winn* on the briefs) for A. C. Phelps and C. B. Phelps.