## FITCHIE *v.* BROWN.

### APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF HAWAII.

No. 47. Argued October 29, 30, 1908.—Decided December 7, 1908.

Executors, parties to the action but who have not appealed, cannot be heard against a decree construing the will and determining the validity of trusts on an appeal taken by other parties.

The common law having been made applicable by statute in Hawaii, and there being no other statute regulating the subject, trusts must be valid as at common law; and the utmost extent of a testamentary trust is limited by ascertained lives in being at the time of its creation, selected by the testator but not necessarily having an interest in the property, and for twenty-one years after the death of the last survivor which must be ascertainable by reasonable evidence.

The testator's intent is to be sought and carried out if not illegal; and although the persons whose lives are to limit a trust may not actually be so designated in the will it is sufficient if a class or number of lives are referred to so as to plainly indicate that they were selected for that purpose.

A testamentary trust to continue as long as possible "under the statute" is not void, because in Hawaii there is no statute and the common

law is applicable; the testator's intent being evident that the trust was to continue as long as legally possible.

The fact that the class limiting the duration of a common-law trust is large—in this case over forty—does not render it void if it is otherwise legal.

A trust created for as long a period under the statute as possible *held* legal at common law and to be limited by the lives of annuitants mentioned in the will and evidently intended, although not so specified, by the testator as being the lives selected for the duration of the trust and twenty-one years after the death of the last survivor. . .

Where there are a number of annuitants constituting a class selected to determine the duration of a common-law trust, the fact that there is a corporation among them will not render the trust illegal, as creating a perpetuity; the annuity to the corporation will cease on the expiration of the trust twenty-one years after the death of the last surviving individual annuitant.

In this case, surplus income, after paying specified annuities, should be accumulated until the termination of the trust and then distributed as part of the estate to those entitled thereto under the will.

Whether or not a trustee named in a will can act as such does not affect the validity of the will; in case he cannot act the court can appoint a trustee to carry out the provisions of the trust.

18 Hawaii, 52, affirmed.

THE parties to this proceeding agreed upon a case, without action, containing the facts upon which a controversy had arisen between them, and submitted the same to the Supreme Court of the Territory of Hawaii, conformably to the laws of that Territory.

The court heard the case and made a decree therein, from which those named above as plaintiffs in the submission have appealed to this court, but the defendant executors have not appealed.

From the agreed statement of facts contained in the submission it appears that one George Galbraith, who died at Honolulu on the fifth of November, 1904, while domiciled in the Territory of Hawaii, left a will, which has been duly admitted to probate in Hawaii, disposing of an estate of about $121,000 in personal property and $128,000 in real estate in Hawaii, and a small amount of real estate in Ireland.

The will gave some pecuniary legacies to a number of people, relatives and friends, and then provided that—

"The balance, residue or remainder of my estate is to be placed in trust for as long a period as is legally possible, the termination or ending of said trust to take place when the law requires it under the statute.

"I hereby nominate and appoint the Hawaiian Trust Company, Limited, of Honolulu, Territory of Hawaii, as trustee of the aforesaid balance, residue or remainder of my estate and they are to devote sufficient of the annual income derived from the same toward paying the following annuities, which are to be free and clear of all taxes, unto the following persons mentioned, namely," [here follow the names of the annuitants and the amounts which they are to receive yearly].

"All of the foregoing for life, and then to their heirs, save and excepted the last three persons, namely, Josie Fink, Emma Douglass and Matilda Bailey, who are to receive only their life annuities and at their death all their interests to cease.

"On the final ending and distribution of the trust, the trust fund to be divided equally amongst those persons entitled at that time to the aforementioned annuities."

On the same day the testator made a codicil, in which he made some changes of the annuities, substituting for the annuity given to the seven children of Hugh Galbraith, of $2,520 annually, an annuity to the same children of $2,100 yearly for life, and then to their heirs.

The testator also bequeathed by the codicil an annuity to the Kona Orphanage of Kona of $100 yearly, "under the same conditions as the other annuitants mentioned, save and excepted, Hugh Galbraith, Josie Fink, Emma Douglass, and Matilda Bailey."

Upon the above facts several questions arose and were submitted to the court below, among them one which relates to the validity of the trust and another to the disposition of the surplus income remaining after the payments to the annuitants mentioned in the will.

The Supreme Court of Hawaii ordered a decree to be entered, which declared that the will of George Galbraith established a valid trust, and that the Hawaiian Trust Company, Limited, a corporation, the trustee named in the will, was legally authorized to administer the trust; that under the trust it was the duty of the trustee to pay out of the income of the trust property the annuities payable by the provisions of the will to the four persons named therein for their respective lives and for the payment of the other annuities payable by the will to the other annuitants therein named for and during their respective lives, and thereafter to pay the same to their heirs respectively until the end of twenty-one years after the death of the last survivor of all the said annuitants, and during the same period of time to pay to the Kona Orphanage the annuity directed in the will, and at the end of said twenty-one years to divide the trust fund and its accumulated and unapplied income as required by the direction in that behalf contained in the will.

*Mr. Aldis B. Browne*, with whom *Mr. W. L. Stanley, Mr. Henry Holmes* and *Mr. Alexander Britton* were on the brief, for appellants:

The trust for final distribution—"on the final ending and distribution of the trust, the trust fund to be divided equally amongst those persons entitled at that time to the aforementioned annuities"—is invalid because there is no direction in the will as to when it is to take place, to which effect can be given.

The words in question would not have the effect of fixing the time for the termination of the annuities and the payment over of the *corpus* at the end of twenty-one years after lives in being.

As to what is the effect of inserting such words, and the absence of any general rule on the question, see *Shelley* v. *Shelley*, L. R. 6 Eq. 540; *In re Johnston*, L. R. 26 Ch. D. 538; *Sackville-West* v. *Viscount Homesdale,* L. R. 4 Eng. and I.

App. Cas. 543; *Harrington* v. *Harrington*, L. R. 5 Eng. and I. App. Cas. 87, 105–107; *Hill* v. *Hill*, L. R. (1902) 1 Ch. Div. 537, 807; *In re Moore*, L. R. (1901) 1 Ch. Div. 936; *In re Exmouth*, L. R. 23 Ch. Div. 158; *Lord Scarsdale* v. *Curzon* (1860), 1 J. and H. 40; *Davies* v. *Davies*, 36 Ch. Div. 359, 380, 387, 392; *Tollemache* v. *Earl of Coventry*, 2 Cl. and Fin. 611; *Pownall* v. *Graham*, 33 Beav. 242.

Galbraith's will does not dispose of heirlooms; it does not contain any such referential trust, nor does it contain any executory trust, because if anything is clear as to the effect of the words in question, it is that they do not in themselves make the trust executory. 1 Perry on Trusts (2d ed.), par. 359; *Harrington* v. *Harrington, supra; Hill* v. *Hill, supra.*

There is no ground for saying that the trust is executory, and therefore the court will mold the limitations; and it is only by ignoring the fact that the above are cases of referential trusts, executory trusts, or trusts in which the lives to be taken are pointed out by the testator, that they can be considered as having any bearing on the case before the court. All these cases are English. The policy of the law of Hawaii, where estates tail are illegal (12 Hawaii, 375), does not require this court actually to go beyond the cases decided in England where estates are entailed to support hereditary titles and rights.

But if the words in question could have the effect of fixing the time for the termination of the annuities and the payment over of the *corpus* at the end of twenty-one years after lives in being, still the testator cannot be taken to have selected the lives in question, or any lives. There is no necessary presumption either by force of the common law or by the terms of the will, as compared with other wills which have been the subject of judicial decision, that the lives of the named annuitants, or any lives, were selected by the testator. Hawkins on Wills, 1; *Scale* v. *Rawlins*, L. R. (1892) App. Cas. 342, 343; *Pownall* v. *Graham*, 33 Beav. 242, discussed and distinguished.

To hold that Galbraith's will directs that the lives of all of

the "forty odd" annuitants are to measure the lives in being, would still make the trust void for remoteness, because it will tend to a perpetuity, as the extinction of forty odd lives is more than can be made out by reasonable evidence or without difficulty. *Thellusson* v. *Woodford*, 4 Ves. 290; *S. C.*, 11 Ves. 136; Gray, Rule against Perpetuities, § 218.

*Mr. John C. Gray*, with whom *Mr. Roland Gray* was on the brief, for the Hawaiian Trust Company, an appellee.

There is nothing illegal in the grant of an annuity, and an annuity may be for years, for life or perpetual.

The invalidity of a gift over does not affect the validity of an annuity. The annuity will continue up to the time fixed for the bad gift over, or else it will continue forever. But this is not material, as in this case the gift over is valid.

The whole intention of the testator must be considered together. He was not establishing two or more entirely separate funds. The testator states his two purposes in establishing the trust fund: the payment of annuities and the distribution of the principal of the fund. The trust is to continue as long as it is legally possible, consistently with the accomplishment of these two purposes.

Further, the surplus income not being disposed of during the payment of the annuities, the final gift of the trust fund carries the accumulated surplus income. This is the intention which is presumed in the absence of indications to the contrary, and it is also actually in accord with all the indications in this will. On any other theory there would be an intestacy as to that part of the income. Such an accumulation is legally possible only when the gift of the accumulations becomes vested within the period allowed by the rule against perpetuities. *Southampton* v. *Hertford*, 2 V. & B. 54, 61; *Boughton* v. *James*, 1 Coll. 26, 45; Gray on Rule against Perpetuities, §§ 671, 674. The trust as an entirety, therefore, cannot continue beyond that period. But the testator cannot have intended that the payment of the annuities and the accumulation of the

surplus income should stop at different times. The gift over of the trust fund is a single gift to take effect at one time, and it must have been intended to include the whole capital and accumulated income in a single distribution.

The trust for distribution is valid. The devise is not bad for uncertainty. The testator has sufficiently indicated what lives should be taken, and those lives were the lives of the persons to whom annuities were given for life. On this branch of the case see *Pownall v. Graham*, 33 Beav. 242; *Shelley v. Shelley*, L. R. 6 Eq. 540; *Re Johnston*, 26 Ch. Div. 538, 546; Gray on Rule against Perpetuities, §§ 363–367; *Harrington v. Harrington*, L. R. 3 Ch. Div. 564; *S. C.*, L. R. 5 H. L. 87; *S. C.*, L. R. 3 Ch. 574; *S. C.*, L. R. 5 H. L. 87, 105, 107; *Hill v. Hill*, 1 Ch. Div. 807, 813.

If the trust for distribution is sustained, the surplus of income accruing before the time of distribution is to be accumulated. On this point see *Genery v. Fitzgerald*, Jac. 468; *Re Dumble*, 23 Ch. Div. 360, 365; *Hurford v. Haines*, 67 Maryland, 240; *McKee's Appeal*, 96 Pa. St. 277, 284; *Cochrane v. Schell*, 140 N. Y. 516, 537; *Abbot v. Essex Co.*, 18 How. 202, 216; *Given v. Hilton*, 95 U. S. 591, 594; *Kenaday v. Sinnott*, 179 U. S. 606, 616; *Minot v. Tappan*, 127 Massachusetts, 333, 337; *Re Travis*, 2 Ch. Div. 541, 548.

*Mr. Clarence H. Olson*, with whom *Mr. William O. Smith* and *Mr. A. Lewis, Junior*, were on the brief, for Cecil Brown and William O. Smith, Executors, appellees.[1]

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

In the view we take of the case there are but two questions necessary to be noticed, and they involve the validity of the trust and the disposition of the surplus income. The appel-

[1] See statement in opinion as to right of the executors' counsel to be heard, *post*, p. 328.

lants, who are the heirs of testator, insist, first, that the provision in the will for final distribution, ordering the trust fund to be divided equally among those persons entitled at that time to the annuities mentioned, is invalid, because there is no direction in the will as to when it is to take place, and therefore effect cannot be given to it; that the only direction in the will as to the duration of the trust is contained in the words "the residue . . . to be placed in trust for as long a period as is legally possible, the termination or ending of said trust to take place when the law requires it under the statute." Unless there is contained in those words a direction as to the duration of the trust, or, in other words, a direction as to the period at which that part of the trust which consists of the payment of annuities is to cease, and that part which consists of the distribution of the capital is to take place, then, it is contended, the duration of the trust has not been sufficiently declared by the testator, and the trust is one which the court cannot carry out; second, that if the above words do constitute a direction as to the duration of the trust, yet still the testator has not selected the lives in being which are to be taken as a limitation of the trust; third, that even if the testator had selected the lives consisting of all the annuitants mentioned, they are more than forty in number, and the trust is void, because it would then tend to a perpetuity, as the extinction of more than forty lives is more than can be made out by reasonable evidence or without difficulty, it being quite impracticable to ascertain when the last of more than forty lives would be extinguished.

The counsel for the executors of the testator, appellees herein, was permitted in this court to file a brief and was heard orally on the argument before us, although no appeal from the decree had been taken by the executors, this court stating, however, that it would thereafter decide whether counsel for executors had any right to be heard to contend against the decree of the court below.

Counsel, in fact, did argue against some parts of the decree,

contending that the trust was valid in so far as it provided for the payment of the annuities specified, but that the provision for final distribution was void, and that the annuities succeeding to and other than the life annuities were perpetual, and that there was an intestacy as to that not required to satisfy all the annuities.

We are of opinion that counsel for the executors had no right to appear and be heard against the decree, no appeal having been taken from it by his clients.

The trustee contends that the whole trust is valid, and that the surplus income over the amount necessary for the payment of the annuities mentioned must be accumulated up to the time of the general distribution under the trust, as provided for in the will, and that such surplus shall then be distributed as part of the trust fund to the persons then entitled to that fund.

Our first inquiry is, Was this trust valid as a whole? It is conceded by all that the common law is applicable, and that there is no statute in Hawaii governing the subject, except the statute making the common law applicable there, and that the utmost extent of a trust at common law is limited by lives in being at its creation and for twenty-one years thereafter; that the lives must be selected by the testator in his will; that they must be ascertained lives, i. e., lives that can be distinguished, and the fact of the death of the last survivor must be capable of being made out by reasonable evidence [*Thellusson* v. *Woodford*, 4 Ves. 227; *S. C.*, 11 Ves. 134, 146; *In re Moore* (1901), 1 Ch. 936], and the selected lives need not be those having an interest in the property. *Moore's Case* is an example of a void limitation on the ground of uncertainty. The limitation was measured by twenty-one years from the death of the last survivor of all persons living at the death of the testatrix.

A perusal of the will shows that the testator did not in so many words name the persons whose lives the trustee contends he selected for the limitation of the trust.

However, if the scheme of the will, discoverable from its provisions, be such that a plain implication arises from those provisions that a certain class or number of lives mentioned, or referred to, in the will were selected by the testator for a limitation of the trust, such implied selection is sufficient. It is the intention of the testator that is to be sought, and such intention is not always found to have been directly, and in so many words, expressed in the will. An intention, which is implied from language actually used and from facts actually appearing in the will, is to be carried out, provided it does not violate the law. An intention so implied is as good as an intention more plainly and in direct terms expressed. The question is, therefore, whether the testator, by an implication arising from the language used in the will and the facts therein appearing, selected those lives by which the trust is to be limited.

Looking at the will, it is seen that a trust is created for three purposes: The first, to pay certain annuitants out of the income of the fund; the second, to hold the fund until the time for distribution arrives; and the third, to distribute it to those people who may then be entitled to it, as provided by the terms of the will.

The whole trust, the testator has provided, shall continue as long as is legally possible, and it is not to be confined to any particular subdivision of the trust. The direction to hold and distribute is as imperative as the direction to pay annuitants until distribution is made. When the testator created the trust in the language already quoted he must have intended it should be measured by some lives then in being, and for not more than twenty-one years thereafter, because that is the longest time a trust of that kind is legally possible, and he provided it should last as long as that. There are no other lives that can reasonably be said to have been within the intention of the testator when he was making this provision. It is said that being ignorant of the legal length of time a trust could last, he therefore provided that it should

last as long as legally possible, and thus he could not have had an intention to select any particular life or lives in limiting the length of the trust.

There is force in the argument, but we are disposed to think that the position taken by the trustee is the correct one, and, indeed, is the only one compatible with the intention of the testator, to be gathered from the will. That intention could not have been to create annuities to last forever, as is contended, because it is plain from the provisions of the will that the testator intended to have the gift over of the whole estate created by the will divided at some future time among those who would be entitled to it at the time of such distribution. A perpetual annuity would prevent some part of the gift over from taking effect. There is not only the provision for continuing the trust as long as is legally possible, but there is also a provision, as part of the trust, for holding the fund and distributing it according to the terms of the will. Distribution, therefore, is certainly part of the scheme of the will, and distribution of all of the fund created by the trust—not a part of it. This distribution could not take place if the payment of the annuities provided for in the will were to continue forever.

As he was making provision for the annuitants mentioned in the will and for the payment to the heirs of such of those annuitants as died, it seems plain that the trust for the payment of the annuities should continue no longer than up to the time provided in the will for the distribution of the whole estate, and that distribution we think the testator intended to be twenty-one years after the death of the last survivor of the annuitants named in the will, for that period was as long as the trust could last under the terms of the will.

Upon all these considerations the inference, we think, is very strong that the lives selected were the lives of the annuitants. A reading of the will fails to suggest any other set of lives that the testator could reasonably be supposed to have intended. The inference that he intended these lives is almost conclusive. That he intended to dispose of his whole estate,

and not to die intestate as to any part of it, is plain from the language of the will. Either these lives must be regarded as intended by the testator or there is an intestacy as to a considerable part of the estate. The testator certainly did not mean that, and there is in addition a strong presumption against it. Counsel for the heirs do not argue that testator did not intend to make testamentary disposition of his whole estate, but that the disposition which they contend he did make was invalid. The answer to the question of what disposition he did make is easier to be given when aided by the presumption that he intended a valid rather than invalid disposition, there being from the language of the will one construction of his intention that would make the will valid, although there might be another possible, and at the same time unlikely, construction that would render it invalid. This selection prevents the trust from being bad for uncertainty or remoteness.

The whole of the language of the will must be considered, and while it says the trust is to continue as long as it is legally possible, it must also be remembered that a distribution of the whole estate is to be made, and therefore the continuation of the trust must also be limited by the direction to distribute; or, in other words, the trust is to continue as long as is legally possible and as shall be consistent with making the distribution as directed by the will. This distribution must be made at a time which is not too remote, that is, a time within which the trust would be valid, for the testator provided that the trust should only last that long. Payments of the most of the annuities are to be continued to the heirs of the annuitants, but we think these payments are to stop with the death of the last survivor of the annuitants named in the list and twenty-one years thereafter. The distribution of the entire *corpus* of the fund remaining with the trustee is then to be made as provided for in the will.

The use of the words "under the statute" in the will, providing for the termination of the trust when the law requires

it under the statute, is not material. It must be assumed that the testator was not positive as to the time provided by law for the duration of a trust, or whether it was limited by any particular statute. It is enough to know that his desire was to have the trust continue as long as was legally possible, and consistent with distribution as directed, and that the estate was to be then distributed, and hence the trust to pay the annuities was to cease when it would no longer be consistent with the provision for distribution. As the testator has mentioned annuitants to whom payments are to be made, it is most reasonable to infer from that fact that their lives and the life of the survivor of them were the lives he had in view, and therefore they are to be regarded as selected by him. The fact that in the meantime, when an annuitant died, payment was to be made to his heirs, does not affect the limitation to the survivor of the annuitants. His death then terminates the class, and twenty-one years from that time distribution is to be made.

As the question whether a valid trust has been created depends upon the construction to be given to the language of this particular will, reported cases in regard to the language used in other wills (unless similar to this in their facts) are not of great benefit in the solution of the question as to the intention of the testator in the will before us. The case of *Pownall* v. *Graham*, 33 Beav. 242 (Gray on Rule against Perpetuities, § 219), seems, however, to be as nearly in point as any to be found. There the question was as to what lives were to be taken as measuring the limitation of the trust, as none had been directly selected in so many words by the testator, but it was thought, upon looking over the entire will, that the testator intended a certain class of lives mentioned in it as the limitation of the trust, and the court accordingly so decided. Counsel for the heirs have criticised the application of that case, but we think unsuccessfully.

Some light is also to be found in a certain class of English cases, known as the Heirloom Cases, where bequests of per-

sonal property were made to go as heirlooms along with certain real property, "as far as the rules of law and equity will permit." These cases are to be found in Gray on Rule against Perpetuities, notes to §§ 363–367. They are cited for the purpose of showing that a limitation in a gift, "as far as the rules of law and equity will permit," is not bad for uncertainty, and that the period of limitation to be taken is to be determined from a consideration of the whole will. They strengthen the proposition that it is not necessary to find in the will, in so many words, the selection of lives, but that such selection is good if from a consideration of the whole will that selection can be ascertained.

Counsel for the heirs contend that there is as much reason for including the Kona Orphanage among the lives of the annuitants as a limitation of the trust as there is to say that the limitation includes only the individual annuitants. The orphanage is a corporation or joint stock company, and could not be included in or constitute a life in being within the rule of which we are speaking. To include it would render the trust void, and the testator intended a valid trust.

We see no reason for holding that the number of annuitants, which it is said exceeds forty, is too large for a valid limitation of the trust. There are cases cited from the English reports showing that even a larger number than that has been held not to exceed a valid limitation, and in *Humberston* v. *Humberston*, 1 P. Wms. 332, which is cited in *Thellusson* v. *Woodford*, 11 Ves. 112, 135, it would seem there were about fifty life estates.

We therefore sustain the validity of the trust in this case, and the question remaining is as to the disposition of the surplus income arising during the payment of the annuities. The will shows that the testator supposed there would be such surplus. Should it be accumulated or paid to the heirs of testator? We think the surplus, after paying annuities, must accumulate as part of the trust estate until the time arrives for the distribution of that estate, and that such accumulation

must then be distributed as a part thereof to those who will then have the right to take the estate as provided for in the will. The accumulation is to be treated as a surplus arising from both real and personal estate, and the person or persons entitled to receive the main fund are to take the surplus as if it arose entirely from personalty. Some of the cases upon this subject are gathered in the brief of counsel for the-trustee and it is not necessary to cite them here. Holding the trust to be valid, it is not now necessary to determine to whom the distribution is to be made when the time for distribution shall arrive.

The trust company is entitled to take the property and execute the trust. We do not understand that this is now controverted by counsel for any of the parties. In any event, it does not affect the validity of the trust. If the trustee named could not act the court would appoint a trustee to carry out the provisions of the trust. *Vidal* v. *Girard*, 2 How. 127, 191; *Matter of McGraw*, 111 N. Y. 66, 104.

The judgment of the Supreme Court of Hawaii is

*Affirmed.*