**IN THE MATTER OF THE ESTATE OF GEORGE H. HOLT**, Deceased

NO. 16488

(S.P. NO. 91–0011)

SEPTEMBER 16, 1993

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, AND RAMIL, JJ.

## OPINION OF THE COURT BY MOON, C.J.

The trustee of a testamentary trust filed a petition for instructions in circuit court to determine the correct termination date of the trust. The circuit court held that in order to avoid violating the Rule Against Perpetuities, the trust must terminate twenty–one years after the death of the last survivor among the testator's eleven children. Because the last survivor died in 1986, the court held that the trust must terminate in the year 2007. The guardian ad litem, appointed by the court to represent the interests of unascertained or yet unborn trust beneficiaries, now appeals to this court, contending that the trust should not terminate until twenty–one years after the death of the last survivor of the testator's grandchildren who were alive at the time of the testator's death. We disagree and affirm the ruling of the circuit court.

## I. BACKGROUND

The testamentary trust, which is the subject of this appeal, was created by the 1914 will of George H. Holt (Holt), who died in 1929. The testamentary trust was the subject of a prior appeal decided by this court in *In re Trust Estate of George H. Holt, Deceased*, 42 Haw. 129 (1957) (*Holt I*). Both this court's 1957 decision and the instant appeal focus on the following provision of Holt's will:

> All the rest, residue and remainder of my estate I give, devise and bequeath to my trustees hereinafter named, and their successor or successors in trust: In trust to hold, care for and manage the same for as long a period as is legally possible; determination or ending of said trust to take place when the law requires it under the Statute; and during the pendency of said trust to pay the income from the same to my said wife during her life, or so long as she shall remain a widow, and after her death or future marriage, to stand possessed thereof, in trust as aforesaid, and to pay the income to all of my heirs in equal shares per stirpes, and upon the final ending of the term of said trust, as aforesaid, to divide my trust estate among the persons entitled to the same at that time under the Law per stirpes.

There are currently fifty–three income beneficiaries, twelve of whom are Holt's grandchildren, who were living at the time of Holt's death.

The question confronting this court in *Holt I* was how to correctly interpret the trust phrase, "and to pay income to all of my heirs in equal share per stirpes." All of Holt's eleven children had survived Holt and his wife,

who died in 1934. Following Holt's wife's death, the income from the trust estate was divided into eleven equal shares and distributed to the Holt children.

Over the next fifteen years, five of the children died; three died leaving natural children surviving them, one daughter died childless, and one son, Christopher, died leaving a wife and an adopted daughter. Following the death of the childless daughter, the trust income was divided into ten equal parts and distributed to the surviving Holt children and to Holt's grandchildren whose parent in the Holt line of descent had died.

However, following Christopher's death, the estate's trustee requested instructions from the circuit court as to the disposition of Christopher's one–tenth share in the trust income. The circuit court ruled that Christopher's interest in the trust income was "an estate of inheritance which he could dispose of by will or by assignment." *Id.* at 131. The court further ruled that if Christopher had died intestate, his adopted child would have inherited his trust income share, but that not being the case, his surviving spouse must be given the share because Christopher had provided for such in his will. *Id.* The circuit court stated that, according to the terms of Holt's testamentary trust, "[a]t the time of distribution, upon termination of the trust, [the adopted daughter] and her children will be in the line of descent, and entitled to a share of the corpus, the amount to be taken to be determined at that time dependent upon who is alive to take and the degree of kinship." *Id.* at 132. The trustee appealed.[1]

This court began by noting that the phrase at issue provided that trust income would be distributed specifi-

---

[1] Two of Holt's surviving children also appealed, but the issue they raised is not relevant to the present case.

cally to Holt's "heirs" upon the death or remarriage of his widow. We then pointed out that

> [w]hen a gift is made in a will to heirs of a designated person, the word "heirs" means persons who succeed to the property of such designated person under the law which governs intestate succession.
>
> Heirs of a designated person are ordinarily determined as of the date of death of such person, unless the testator shows a contrary intent. This court has held that where a gift to heirs is postponed until the termination of a preceding estate a contrary intent is shown and that the heirs will be determined as of the date of the termination of the preceding estate.
>
> In this case the testator gave the income of the trust to his widow for life and thereafter to his heirs. So, the heirs were, initially, determinable as of the date of death of the widow. Testator's heirs on such date were his eleven surviving children.

*Id.* at 132–33 (citations omitted).

We then stated that the issue presented was whether the word "heirs" was to be limited to Holt's children, or whether "heirs" should "include persons who were his heirs from time to time as the income accrued[.]" *Id.* at 133. We noted that if the word were limited to the children, then the circuit court's decision was correct, and it would therefore be possible "that such heir's right to the share of the income would go, after his death, to persons who would not be in the line of descent from the testator." *Id.* at 134. If, however, "heirs" were construed to include "persons who were [Holt's] heirs from time to time as the income accrued," then

each of the persons who were initially determined to be his heirs would only be entitled to his proportionate share of the income which accrued during his life. Such heir would have no control over the disposition of the share of the income which accrued after his death. The share of income accruing after his death would go to persons who would be testator's heirs and who traced their descent through such heir.

*Id.* (citation omitted).

We decided that the latter construction was the correct one, reasoning that

[t]he testator provided that upon the termination of the trust the corpus be divided among "the persons entitled to the same at that time under the law per stirpes." We construe this provision to mean that the corpus is to be distributed, per stirpes, to persons who are testator's heirs at the termination of the trust. If the provision for the payment of the income is considered in connection with the provision for the distribution of the corpus, it is apparent that the testator intended to benefit all persons who were his heirs at any time between the date of the death of the widow and the termination of the trust. There is no indication in the will that the testator intended to benefit only persons who were his heirs at the time of the death of the widow and persons who were his heirs at the termination of the trust and to exclude from its provisions persons who were his heirs at any time during the intervening period.

The foregoing construction of the provision for the payment of the income is the same construction that has been placed by the trustee.

> Thus, when [one of Holt's daughters] died, the trustee paid the share of the income which was formerly paid to [that daughter] to her children, who upon her death became testator's heirs per stirpes through her.

*Id.* at 135. We concluded that "the interest of Christopher in the income of the trust was not an estate of inheritance and that after his death [his adopted daughter] became entitled to such interest as [Holt's] heir per stirpes through [Christopher]." *Id.* at 140.

On January 10, 1991, Bishop Trust Company, Ltd. (trustee), current trustee of the Holt testamentary trust, filed in the circuit court a petition for instructions asking the court to determine the correct termination date of said trust. The trustee stated that twelve of the fifty-three currently living heirs of Holt had been alive on the date of his death in 1929. The trustee further stated that it was "uncertain about the termination date of the Trust . . . and whether the 'lives in being' which limit the duration of the Trust under the Rule Against Perpetuities are those of Testator's heirs or Testator's children or some other person(s)." The trustee thus requested that the court decide "whether the Trust terminates twenty-one years after the death of the last survivor of Testator's heirs alive on the date of [his] death, or twenty-one years after the death of the last survivor of [his] children, or twenty-one years after the death of some other person(s), or on some other date." Also on January 10, 1991, the circuit court ordered the appointment of a guardian ad litem (GAL) to represent the interests of any unascertained or not yet born beneficiaries under Holt's will.

On September 17, 1992, following a hearing on the trustee's petition for instructions, the circuit court ruled

that the term "heirs" in Holt's will referred to Holt's eleven children alive at the time of both his and his widow's deaths, and that said children were the "measuring lives" applicable in a calculation of the trust's legal duration under the Rule Against Perpetuities (RAP). Implicit in the court's ruling was the conclusion that the "heirs" specifically referred to in the testamentary trust were the proper measuring lives for any RAP calculation. Because the last of Holt's surviving eleven children had died in 1986, the court held that the trust must terminate twenty–one years following that child's death, *i.e.*, in the year 2007.

The GAL appealed, contending that the term "heirs" should also include any of Holt's grandchildren who were alive at his death. Although the GAL essentially agrees with the circuit court that the "heirs" mentioned in the trust are the proper measuring lives for any RAP calculation of the trust's legal duration, the GAL argues that the trust should not terminate until twenty–one years after the death of the last survivor among the twelve current surviving grandchildren.

## II. **DISCUSSION**

Instead of including an explicit termination date for the instant testamentary trust, Holt provided that the trust was to last "for as long a period as is legally possible[,] determination or ending of said trust to take place when the law requires it[.]"[2] Implicit in the circuit court's order is the conclusion of law that the trust, lacking an

---

[2] The trust further specifies that it shall terminate when the law requires it "under the Statute." As the GAL notes, it is unclear why Holt referred to "the Statute," because the common law RAP was applicable in Hawai'i, and no such statute governing the RAP then existed.

explicit termination date, must come to an end within twenty–one years after lives in being at the trust's creation in order to avoid violating the RAP. The circuit court further concluded as a matter of law that said lives in being — the "measuring lives" for RAP purposes — were the "heirs" specifically referred to in the applicable trust provision, and that the term "heirs" must refer to Holt's eleven children alive at the time of both Holt's and his widow's deaths. The GAL has essentially only challenged the last of the foregoing conclusions by the circuit court, arguing that the term "heirs" must also refer to any of Holt's grandchildren alive at the time of his death.

We review conclusions of law under the right/wrong standard. *Amfac, Inc. v. Waikiki Beachcomber Investment Co.*, 74 Haw. 85, 119, 839 P.2d 10, 28, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citations omitted).

All of the parties are in agreement with the circuit court's conclusion that the RAP is applicable to the instant testamentary trust. "The [RAP] is said to be part of the English common law and is therefore applicable in Hawaii." *In re Estate of Chun Quan Yee Hop*, 52 Haw. 40, 43, 469 P.2d 183, 185 (1970) (citing *Fitchie v. Brown*, 18 Haw. 52, 69 (1906), *aff'd*, 211 U.S. 321 (1908)).[3] The common law RAP germane to the instant case provides that " '[n]o interest is good unless it must vest, if at all, not later than twenty–one years after some life in being

---

[3] In 1992, chapter 525, the Uniform Statutory Rule Against Perpetuities, was added to the Hawai'i Revised Statutes (HRS). However, HRS § 525–5 (Supp. 1992) expressly provides that "[e]xcept as extended by subsection (b), this chapter applies to a nonvested property interest . . . that is created on or after June 18, 1992." Subsection (b) is not relevant to the instant testamentary trust. Therefore, HRS chapter 525 is not relevant to the disposition of the instant case.

at the creation of the interest.' " *Id.* at 42 n.3, 469 P.2d at 185 n.3 (citation omitted).

In the instant case, the circuit court correctly determined that although the testamentary trust and its specific terms were set forth in Holt's will, such trust only became operational at the death of the testator. Therefore, for purposes of the RAP, the specific interests included in the testamentary trust were created at Holt's death. *See* J. GRAY, THE RULE AGAINST PERPETUITIES § 231, at 235 (4th ed. 1942); W.B. LEACH AND O. TUDOR, THE RULE AGAINST PERPETUITIES § 24.12(a), at 44 (1957). Accordingly, in order to avoid a violation of the RAP, any interest provided for in the instant trust must vest, if at all, not later than twenty–one years after some lives in being at Holt's death. Such lives in being at the creation of relevant interests are commonly referred to as the "measuring lives" under the RAP. *See* W.B. LEACH and O. TUDOR, § 24.13, at 47–48.

The circuit court concluded that the proper measuring lives under the Holt trust were those "heirs" specifically referred to in the trust instrument. None of the parties disputes this conclusion. Although the court did not detail its reasoning, such conclusion is in accord with general RAP law:

> Not infrequently a testator directs that property be held in trust "for my children and their descendants, as long as the law allows" or similar verbiage. . . . Courts have given such wording a practical construction and held that it means for the lives of the prime beneficiaries (the children in the case suggested), and twenty–one years thereafter, and sustained the gift.

*Id.* at 49 (citation omitted). Courts have generally held that if an explicit termination date is lacking, but specific

beneficiaries are named in the trust instrument, then such beneficiaries are the applicable measuring lives for a calculation of legal trust duration under the RAP. *See, e.g., Fitchie v. Brown*, 18 Haw. 52 (1906), *aff'd*, 211 U.S. 321 (1908); *Betchard v. Iverson*, 35 Wash. 2d 344, 212 P.2d 783 (1949); *Stellings v. Autry*, 257 N.C. 303, 126 S.E.2d 140 (1962); *Klugh v. United States*, 588 F.2d 45 (4th Cir. 1978).

The single issue in dispute in the present case is whether the term "heirs" in the instant trust — comprising the group of applicable measuring lives — refers only to Holt's eleven children alive at the time of his widow's death[4] or whether the term also includes those of Holt's grandchildren alive at that time. As previously noted, this court in *Holt I* stated unequivocally that "[w]hen a gift is made in a will to heirs of a designated person, the word 'heirs' means persons who succeed to the property of such designated person under the law which governs intestate succession," and that under the applicable law, "[t]estator's heirs on [the date of his widow's death] were his eleven surviving children." 42 Haw. at 132–33. We said nothing about any of Holt's surviving grandchildren being included in the class of "heirs" on the applicable date. Therefore, according to our plain statement in *Holt I*, it is apparent that the circuit court was "right" in holding that the applicable measuring lives were limited to Holt's eleven surviving children.

However, the GAL argues that this court in *Holt I* also broadened the category of heirs under the trust to include all persons who were Holt's heirs from time to time as the

---

[4] Although the circuit court apparently used the dates of both Holt's and his widow's deaths as benchmarks, according to this court's statement in *Holt I*, "the heirs were, initially, determinable as of the date of death of the widow." 42 Haw. at 133.

income accrued and stated that "it is apparent that the testator intended to benefit all persons who were his heirs at any time between the date of the death of his widow and the termination of the trust." *Id.* at 135. The GAL contends that this broadening of the category of Holt's heirs means that any of Holt's grandchildren alive at his widow's death were also "heirs," and that these grandchildren are therefore also measuring lives for any RAP calculation. We disagree.

In *Holt I*, we broadened the category of heirs to include all "persons who were [Holt's] heirs *from time to time as the income accrued*[.]" *Id.* at 133 (emphasis added). We did *not* extend the meaning of the term "heir" for purposes of the RAP to include those persons "who succeed to the property of [a] designated person under the law which governs intestate succession." *Id.* Neither did we hold that Holt's grandchildren who were alive at the time of his widow's death were among his heirs *at that time*. In other words, we did not rule that Holt's surviving grandchildren, whose parents were still alive, possessed a right to a share of the trust income at the time of Holt's widow's death. On the contrary, those grandchildren whose parents were still alive and any of Holt's grandchildren born after his widow's death would only come to possess such a right to an income share when their "Holt–parent" died, thus transforming them *at that time* into Holt's heirs.

The foregoing analysis is clearly implied by our language in *Holt I*. We stated, that according to our holding, the original eleven heirs to the Holt trust income "would have no control over the disposition of the share of the income which accrued after [their] death[s]. The [accrued] share . . . would go to persons who *would be* testator's heirs and who traced their descent *through such heir*." *Id.*

at 134 (emphasis added). Additionally, we noted that when one of the original eleven children, a daughter, had died, "the trustee paid the share of the income which was formerly paid to [that daughter] to her children, who *upon her death became testator's heirs per stirpes through her*." *Id.* at 135 (emphasis added).

Therefore, the identity of Holt's heirs at any particular time following his widow's death would necessarily vary, depending on who was alive at that time. A grandchild or a great–grandchild or a great–great–grandchild, whose parent in the Holt line was still living, would be at most a *potential* heir who would himself or herself become an heir only upon the death of his or her Holt–parent. Accordingly, as the circuit court in the instant case correctly determined, at the time of Holt's widow's death, the category of Holt's "heirs," which also comprised the category of applicable measuring lives for RAP purposes, included only Holt's eleven surviving children. Additionally, because the last of Holt's eleven surviving children died in 1986, the circuit court correctly determined that the instant testamentary trust must terminate twenty–one years after 1986 — in the year 2007.

## III. **CONCLUSION**

Based on the foregoing, we affirm the September 17, 1992 order of the circuit court holding that the Holt trust must terminate in the year 2007.

On the briefs:

*Scott A. Makuakane* and *Bruce L. Lamon* (of Goodsill, Anderson, Quinn & Stifel) for guardian ad litem–appellant.

*Christian P. Porter* and *Robert F. Miller* (of Foley, Maehara, Judge, Nip & Chang) for Income and Contingent Beneficiaries–appellees.